SLUDER ET AL. *v.* MAHAN, AS TREASURER OF SULLIVAN COUNTY.

[No. 18,509. Filed August 6, 1954.]

662

664

*Walter F. Wood,* of Sullivan, for appellants.

*J. Hurley Drake,* of Shelburn, for appellee.

Achor, J.—This is an action by appellants against appellee, Treasurer of Sullivan County, to enjoin the collection of additional taxes levied upon their separate tracts of real estate because of oil production therefrom. Appellants are owners of tracts of land in Sullivan County from which oil was produced during the years 1950, 1951 and 1952.

Appellee's demurrer to appellants' amended complaint was sustained. Appellants refused to plead over and the court accordingly entered judgment denying the injunctive relief sought by appellants.

The error relied upon for appeal is the sustaining of appellee's demurrer.

Appellants' amended complaint contained the following allegations:

"That in the year 1950 there was a general assessment of all the real estate in Sullivan County, Indiana, for State, County, and Township Taxes, including plaintiff's said several tracts of real estate. That said assessment against plaintiffs' said several tracts of real estate was placed on the tax duplicate in the office of said County Treasurer for the year 1952, at the rate of taxation for real estate of State, County, and Township purposes in the Township wherein said real estate is located, and said 1952 real estate taxes have been paid by plaintiffs.

That at the time said general assessment was made in 1950, plaintiffs said several tracts of real estate were producing oil of as great value as was produced in 1952.

That in addition to said Gross Income Tax, Indiana Conservation Tax, and said State, County, and Township Taxes, an assessment of sixty per cent of the amount of oil royalties received by each of these plaintiffs for the year 1952, has been made and placed on the tax duplicate in defendant's said Offices. That said oil royalty assessment was not made with plaintiffs' consent.

That there is no statute in force in the State of Indiana authorizing or permitting assessing and taxing production, other than by gross income tax. That the other various production of other lands in said County has not been assessed for taxation for the year 1952, or any other year.

That unless enjoined by this Court from so doing, the defendant will proceed to collect said illegal production tax, and is threatening to do so, to these plaintiffs' irreparable injury.

That these plaintiffs have joined in this action to prevent a multiplicity of suits."

The following questions were raised by the demurrer and are argued by the parties to this appeal:

1. Was there a misjoinder of parties plaintiff?
2. Was there a defect of parties defendant?
3. Did appellants' complaint state a cause of injunctive relief?

Appellee contends first that the demurrer was properly sustained because the parties joined as plaintiffs did not have a common interest in the subject matter of the action, nor did each of them have an interest in the relief sought by the other. In support of her position, appellee cites the case of *Jones, Treasurer et al.* v. *Rushville National Bank et al.* (1894), 138 Ind. 87, 93, 37 N. E. 338. In that case the complaint alleged that the State Board of Tax Commissioners illegally increased the assessment of the two appellee banks

by assessing each of them for certain stock of the respective banks, which stock was in fact not owned by said banks, but by private individuals. An injunction was asked against the County Treasurer. In that case the court ordered a demurrer sustained on the ground that the parties-plaintiffs were improperly joined. In support of its decision, the court stated: "There is absolutely no connection between the two appellees in this case. They were assessed separately. The tax assessed against one does not affect the property of the other. The relief to which one is entitled, if granted to it alone, does not affect the other. *In absence of some common interest they could not unite in a suit.*"

The statute provides that all persons having an interest in the subject of the action, and in obtaining the relief demanded, shall be joined as plaintiffs. §2-213, Burns' 1946 Repl. It is also provided by statute that when the question is one of a common or general interest to many persons, or where the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole. §2-220, Burns' 1946 Repl. In construing these statutes our courts have announced the general rule as follows:

"It is well established in this State by many decisions, that a number of taxpayers may unite to enjoin the collection of an illegal tax affecting them separately, . . . and that a number of individual owners of separate lots or lands may unite to enjoin the enforcement against such lots or lands of an assessment for a local improvement and to set aside such assessment because of its illegality. No adequate remedy can be granted at law to such taxpayers or owners, and in this State they may separately maintain the suit for injunction; or, to prevent a multiplicity of suits, they may unite. In such cases, the fact that the object of the suit on the part of each plaintiff is to protect his prop-

erty, in which the others are not interested, does not prevent their joinder. The illegality of one act or proceeding which affects them all injuriously, in like manner, furnishes a sufficient community of interest to permit their joinder for the purpose of suppressing a multiplicity of suits."

*Heagy* v. *Black et al.* (1883), 90 Ind. 534, 540. See also: *Quick* v. *Templin* (1908), 42 Ind. App. 151, 85 N. E. 121; *Tate and Others* v. *The Ohio and Mississippi Railroad Company* (1858), 10 Ind. 174, 71 Am. Dec. 309; *Ogden City* v. *Armstrong* (1897), 12 Utah 476, 43 P. 119, 168 U. S. 224; *Shira* v. *State ex rel.* (1918), 187 Ind. 441, 119 N. E. 833.

The question we are required to determine is whether, under the cases cited, there is such a *community of interest* between the plaintiffs to permit their joinder. In the language of *Heagy* v. *Black et al., supra,* such community of interest may exist in "the *illegality of one act or proceeding which affects them all* injuriously, in like manner." It occurs to us that the allegations of the complaint are sufficiently broad to permit proof that the assessments involved were the result of a single scheme, act or proceeding on the part of some public authority for the assessment of a tax upon the appellants, who were thereby all in like manner injuriously affected and, if the tax was illegal as alleged, they could, under the rule announced above, properly join as parties-plaintiffs in a single action in order to avoid a multiplicity of suits.

Secondly, appellee argues, in support of the sustaining of the demurrer to appellants' amended complaint, that there is a defect of parties-defendants. Section 2-219, Burns' 1951 Replacement provides that any person may be made a defendant who has, or claims, an interest in the controversy adverse to the plaintiff or who is a necessary party to the complete

determination or settlement of the question involved. Appellee contends that the county assessor and the county auditor were also necessary parties-defendants to a complete determination of the question involved, and that plaintiffs' (appellants') failure to join them as parties-defendants made the complaint bad as against demurrer. However, this is an action solely to enjoin the *collection of taxes already assessed* and not to enjoin similar, future assessments by the assessor or auditor. The assessments on which the collection of taxes is sought to be enjoined is beyond the control of the county assessor and county auditor and is in the hands of the appellee county treasurer, who is exclusively charged by statute with the duty of their collection. Sections 64-1701, 1702, 1703, 1704, 1705, 1706 and 2203, Burns' 1951 Replacement. No other person has any authority in the matter. Since neither the county assessor nor county auditor could enforce the collection of said taxes, no useful purpose could be served by making them parties-defendants.

Furthermore, it is contended by appellee that, regardless of the legality of eligibility of the assessment of the tax, the complaint is fatally defective because it does not allege that the tax was excessive or unjust. Appellants have cited numerous cases as supporting their position. These include *Forsyth* v. *Board, etc.* (1919), 74 Ind. App. 252, 123 N. E. 699; *Citizens Nat. Bank* v. *Klauss* (1911), 47 Ind. App. 50, 93 N. E. 681; *Hunter Stone Co.* v. *Woodard* (1899), 152 Ind. 474, 53 N. E. 947; *Board of Commissioners of Howard County* v. *Armstrong, Guardian* (1883), 91 Ind. 528.

However, it is to be observed that in each of the above cited cases the relief sought was not *injunctive* relief under the common law to enjoin the collection of taxes, but that each of the above cited cases involved statutory actions for the *recovery of taxes* already paid,

which remedy did not exist under the common law. Each of the above cited cases is grounded upon §64-2819, Burns' 1951 Repl. and similar prior statutes, all of which expressly provided for the recovery of taxes "wrongfully assessed" and "wrongfully paid."

In construing these statutes our courts have considered the fact that they were in derrogation of the common law and that therefore they were to be strictly construed. They have also considered the rule that such statutes should be construed to the end that all property should bear its just share of the cost of government. Consistent with these established rules of construction, our courts have held that the remedy provided by these statutes is exclusive and that whether the tax paid is the result of either a mere irregularity of assessment or even an assessment illegally made, having been paid a refund cannot be obtained under the statute unless the tax itself was in fact "wrongful"—that is, that the property actually assessed was not, in the original instance, properly subject to the tax imposed. *Board of Commissioners of Howard County* v. *Armstrong, Guardian, supra; Board of Commissioners* v. *Millikan* (1934), 207 Ind. 142, 190 N. E. 185. In this connection, it is to be observed that in other states whose statutes provide for the recovery of taxes which were merely "illegally assessed" or "erroneously or illegally collected," their courts have faithfully followed the language of their statutes and have ordered taxes refunded according to the explicit terms of their respective statutes. They have not required that the tax also be *wrongful*. 10 A. L. R. Digest (Taxes), §218, p. 857.

The relief sought in the instant case is not the recovery of taxes "wrongfully assessed" or "wrongfully paid." It is for *injunctive* relief against the collection of taxes allegedly illegally assessed. Therefore, we con-

clude that neither the statute nor the cases grounded thereon in anywise restricts or alters the right to injunctive relief which has long existed under the common law. *Riggs* v. *Board, etc.* (1914), 181 Ind. 172, 103 N. E. 1075; *The Board of Commissioners of Pulaski County* v. *Senn* (1889), 117 Ind. 410, 20 N. E. 276; *Croop* v. *Walton* (1927), 199 Ind. 262, 157 N. E. 275; *Board of Commissioners* v. *Millikan, supra.*

We therefore consider the facts alleged in the complaint to determine whether the taxes here in controversy may have been authorized.

It has heretofore been determined that oil deposits beneath the surface of the soil are "minerals," and that as long as they remain in the ground they are part of the real estate. *Monon Coal Co.* v. *Riggs* (1944), 115 Ind. App. 236, 57 N. E. 2d 598, and that the presence of minerals beneath the surface of the soil is a proper basis for determining the value of real estate for tax purposes. *Riggs* v. *Board, etc., supra.* Therefore, we conclude that the presence of oil in the real estate here involved furnishes a proper basis for determining the assessed value thereof, and although, as contended by appellant, there is no statutory authority for an "oil production tax," nevertheless it occurs to us that the production of oil from the land might be a proper criterion for determining the extent and value of such oil deposits as an element in assessing the value of the land for tax purposes as provided by §64-103, Burns' 1951 Replacement. Furthermore, we cannot say as a matter of law that such additional assessment, if properly placed upon real estate because of oil deposits therein, would be capricious and void merely because it was calculated on the basis of 60 per cent of the oil royalties received by the owner in a given year.

Having made the foregoing observations and conclusions, we now consider whether under any circumstances the taxes here in controversy may have been authorized by statute. No law is more firmly established than this, that no tax shall be assessed which is not authorized by statute. Art. 10, §1 of the Indiana Constitution (Vol. 1, Burns' 1933, p. 98). *Zoercher* v. *Agler* (1930), 202 Ind. 214, 172 N. E. 186, 172 N. E. 907. Pursuant to this rule, our courts have held that increase in a property tax not so made is illegal and may be enjoined by the taxpayers adversely affected. *Postlewaite, Treasurer* v. *Hasse* (1933), 205 Ind. 396, 186 N. E. 761; *Donch* v. *The Board of Commissioners of Lake County* (1892), 4 Ind. App. 374, 30 N. E. 204.

According to the allegations of the complaint, the assessed value of the real estate here involved was determined in a general assessment made in 1950 pursuant to §64-1019, Burns' 1951 (1953 Supp.). No general reassessment as authorized by the same statute could have been possible under the facts before us. The only situations remaining whereby an increase in assessments might have been authorized would have been under the following circumstances: (1) The correction of clerical errors in the making of the assessment rolls, as provided by §64-1024, Burns' 1951 Replacement, which statute is not applicable under the facts before us, and (2) where land or improvements thereon have been omitted from assessment as provided by the following statutes: §§64-1025, 1102, 1201, 1321, 2102, Burns' 1951 Replacement.

However, it has uniformly been held that the officials authorized to increase assessments under the above statutes are restricted to the express provisions of these statutes and that, except as therein provided, they cannot increase the assessment of

property *already* assessed (except under the circumstance of an inaccurate return made by a property owner, which circumstance does not exist here). *Florer, Treasurer* v. *Sherwood, Administrator* (1891), 128 Ind. 495, 28 N. E. 71; *Donch* v. *The Board of Commissioners of Lake County, supra; The Chicago and Erie Railroad Company* v. *John, Treasurer, et al.* (1897), 150 Ind. 113, 48 N. E. 640; *Parkinson* v. *Jasper County Tel. Co.* (1903), 31 Ind. App. 135, 67 N. E. 741; *Parkison* v. *Thompson* (1905), 164 Ind. 609, 73 N. E. 109; *McConnell* v. *Hampton* (1905), 164 Ind. 547, 73 N. E. 1092; *State Board of Tax Comm.* v. *Belt R., etc., Co.* (1921), 191 Ind. 282, 130 N. E. 641.

Inasmuch as the oil beneath the surface of the soil is a corporeal part of the land assessed, it is not an "improvement" which exists apart from the land. Furthermore, we are confronted by the fact that the total area of the real estate here involved was regularly assessed in 1950. Therefore, the actual or potential oil-producing character of such real estate cannot now be assessed as "omitted" property. To do so would be to merely increase the assessment upon land already assessed. *Riggs* v. *Board, etc., supra.* Therefore, we conclude that under the facts alleged in appellants' complaint the assessment involved in this case was not sustained by statutory authority and that appellants' complaint alleged grounds for the injunctive relief prayed.

If our tax structure is presently inadequate to provide that oil-producing real estate may bear its just share of the tax burden, the condition must be corrected by orderly legislative process. Inestimable confusion would result if taxing officials were permitted to increase the established assessments of real estate for tax purposes whenever in their estimation the value thereof warranted such increase.

Judgment reversed, with instructions to overrule appellee's demurrer to the complaint.

NOTE.—Reported in 121 N. E. 2d 137.