BD. OF COMMISSIONERS OF MADISON CO. ET AL. *v.* MIDWEST ASSOCIATES, INC.

[No. 568A95. Filed April 1, 1969. Rehearing denied May 26, 1969. Transfer denied March 20, 1970.]

*Walter C. Dietzen* and *Richard E. Kreegar,* of Anderson, for appellant.

*Harold J. Anderson,* of Anderson, for appellee.

LOWDERMILK, P. J.—This cause of action grew out of a verified petition for restraining order without notice, a temporary injunction, and an injunction filed by the appellee, plaintiff below, against the appellants, defendants below, to enjoin the appellants from selling at tax sale certain real estate situated in the City of Alexandria, Madison County, Indiana.

This property was formerly known as Air Force Plant #46 and was purchased from the United States of America,

acting by and through the Administrator of General Services, by Midwest Associates, Inc., an Indiana corporation. Such purchase was evidenced by a "Contract for Deed", executed on February 17, 1960, by and between the United States Government and individuals operating as a partnership, which later incorporated as Midwest Associates, Inc., hereinafter referred to as "buyer". A copy of said contract discloses that if the buyer shall make payments and perform the covenants mentioned on their part to be made and performed, then the United States Government covenants and agrees to convey, without warranty, express or implied, said property by quitclaim deed to buyer. The agreed purchase price for said real estate and personal property was $340,000, of which $34,000 was to be paid at the time of the execution of the contract, and the sum of $3,825 every three months thereafter, together with interest at the rate of five per cent per annum on the unpaid balance, until one-third of the purchase price or $113,333.34, representing principal only, and all accrued interest, has been paid. When such above sum has been paid, the United States Government agreed to deliver to the buyer its quitclaim deed without representation or warranty of any kind or nature, together with a bill of sale for the personal property involved, and the buyer agreed to, at that time, execute and deliver to the United States Government its promissory installment note for the remaining balance of the purchase price with interest at the rate of five per cent per annum, which note is to be payable in the same equal quarter-annual installments of $3,825 each, plus interest, together with a purchase money mortgage on the real property and a chattel mortgage on the personal property to secure the payment of said note. On February 22, 1960, the United States Government notified buyer to take possession of the land and its appurtenances and certain personal property and the same was done.

The judge of the Superior Court of Madison County issued a restraining order against the appellants, restraining them

from offering and selling said real estate at a tax sale, which had, prior to the issuance of the restraining order, been advertised to be sold at County Tax Sale at the court house in Madison County, Indiana, for delinquent real estate taxes in the amount of $73,158.17.

On November 6, 1967, the cause was heard and on the 31st day of January, 1968, the court issued its decree, ordering that the restraining order and temporary injunction be made perpetual and that the assessed taxes are declared null and void and stricken from the tax records in Madison County; and that the appellants be permanently enjoined from collecting said taxes levied and assessed against the real estate prior to June 18, 1965.

Thereafter, the appellants timely filed their motion for new trial, which was overruled on the 29th day of February, 1968, and from which this appeal lies.

We must first determine in whom the title to the real estate in question is vested.

The record, on its face, discloses that legal title remained in the United States Government.

The question thus presented is whether or not the "Contract for Deed" precluded the equitable title to said real estate from vesting in the purchaser and prohibited the appellant from levying a tax on the subject real estate.

It is now incumbent upon this court to determine the true meaning and legal effect of the "Contract for Deed" entered into between the United States Government and the buyer.

We must look to the terms of the contract. The contract entered into by and between the United States Government and the buyer was titled "Contract for Deed" which is not the customary label given to contracts in the State of Indiana to convey real estate with a down payment and deferred regular periodic payment until full

payment has been made and a deed delivered. However, the contract is to be construed from the verbiage of its contents and not the title.

Having carefully considered the contract in the light of 17 Am. Jur. 2nd, *Contracts*, § 6, p. 341, which states:

"An executory contract is one in which a party binds himself to do or not to do a particular thing, whereas an executed contract is one in which the object of the agreement is performed and everything that was to be done is done. The distinction would seem to relate to the legal effect of a contract at two different stages. An executory contract, it is said, conveys a chose in action, while an executed contract conveys a chose in possession."

we must necessarily conclude that the contract is an executory contract of which a part has been executed. That is to say, that that portion of the same pertaining to the sale of property, and the surrendering of possession to the buyer is an executed portion of the contract, and the conveyance of the legal title by deed to the buyer and the execution of certain mortgages to seller is executory.

Having determined this to be an executory contract to convey real estate we must next determine the status of the equitable title from the execution of the contract to the date of delivery of the deed to buyer.

The buyer contends that the legal title does remain in the United States Government until a quitclaim deed is furnished to it and the buyer is thereby entitled to claim the immunity of the United States Government from liability to the State for taxes and thus escape liability for property taxes which accrued as of March 1, 1960, 1961, 1962, 1963 and 1964, and until such further and future time as the legal title is transferred to the appellee.

Appellant, Board of Commissioners of the County of Madison, Indiana, contends that the real estate in question is subject to taxes to the State of Indiana by virtue of the contract

for sale. This the buyer denies and it further contends that by the terms of the contract it was to receive title to the real estate without warranty, express or implied, by quitclaim deed, only after the payment of certain sums consisting of a down payment and quarterly payments aggregating one-third of the purchase price.

Buyer further contends that the contract itself precludes the title and ownership of said property from taxation by the State of Indiana, and relies upon that portion of the contracts as follows: ". . . but the title and ownership of said property shall remain in the seller or its assigns and no right, title or interest in said property either legal or equitable shall pass by virtue of this agreement."

Neither of the parties have cited any section of a Federal statute nor submitted any regulation or other promulgation thereunder in their briefs which would affect the question presented by the issues.

The record fails to disclose and the parties make no mention that there was a representation made to the buyer that the property would be exempt from taxation during that period of time from the actual transfer of possession of the property to the buyer until the legal title thereto was actually transferred to the buyer.

It must be noted and considered for the purposes of this opinion that the parties did consider the possibility of State taxation and the seller set the contract up to protect itself against any lien thereon for State taxes. This is evidenced by language from the contract for deed as follows:

"Buyer will, while any of the indebtedness secured hereby remains unpaid, pay before they become delinquent, all taxes, both general and special, assessments and governmental charges lawfully levied or assessed against the above-described property or any part thereof; will promptly furnish the seller or holder of the indebtedness secured hereby the receipts, or photostatic or duplicate copies thereof, showing such payments except when pay-

ments are made by seller as hereinafter provided. Buyer will not permit the above-described property, or any part thereof, to be sold or forfeited whatsoever. Any irregularities or defects in the levy or assessment of taxes, assessments, and governmental charges paid by the seller are hereby expressly waived and receipt by the proper officer shall be conclusive evidence both as to the amount and validity of such payments.

"Nothing herein contained, however, shall prohibit buyer from contesting in good faith the validity of any such taxes which may be levied and assessed against the property above described; provided, buyer gives due written notice of its intention to contest such taxes to the seller at least thirty (30) days before the date any such tax or assessment may become delinquent, and provided further that buyer has on deposit with seller, at least fifteen (15) days prior to the date any such tax or assessment may become delinquent, a sum sufficient to satisfy any judgment that may be obtained against buyer or the property by reason of any such contest.

"That if any taxes, assessments or insurance premium be not paid when due, or if any installment of the purchase price or interest thereon, shall become delinquent for a period of thirty (30) days, or if the buyer shall fail to observe or perform any other conditions or terms of this agreement, the seller may at its option cancel this agreement, take immediate possession of said property and remove the buyer or any other person from the real estate without any notice or demand whatsoever, the necessity therefor being hereby expressly waived; . . ."

Tax exempt status of certain property where the legal title is in the United States Government is covered by our Indiana Statutes, being § 64-201, Burns' 1961 Repl., which provides, in part, as follows:

"Exemptions enumerated—The following property shall be exempt from taxation:

First. The property of this state; and the property of the United States, its agencies and instrumentalities, to the extent that this state is prohibited by law from taxing said property of the United States, but any right, title, interest, lien, claim or lease held in, on, to or of said property shall be assessed and taxed as other property is assessed, and

taxed to the extent that this state is not prohibited from taxing the same by the Constitution of the United States."

Appellant concedes that during the time this property was owned by the United States Government it was not obligated to pay tax on it, but further contends that upon the execution of the contract the equitable title passed to the buyer and that the equitable title in the buyer is subject to Indiana taxation.

Appellant in its brief, relies heavily on the case of *S.R.A. Inc. v. Minnesota* (1946), 327 U.S. 558, 66 S. Ct. 749, 90 L. Ed. 851. We shall refer to the above cited case in this opinion as the "Minnesota case".

In this case the United States Government agreed to sell realty located in Minnesota to a private concern. The parties entered into an executory contract whereby the purchaser immediately took possession of the land. The contract also provided that the purchaser make a down payment at the execution of the contract with certain annual installments to be paid thereafter. Upon completion of these requirements, the United States Government was required to execute and deliver a quitclaim deed for the realty to the purchaser. With this in mind, the State of Minnesota levied real estate taxes against the property. The purchaser objected to the taxes and claimed an exemption because the legal title remained in the United States. The trial court held that the property was not exempt from state taxation. This judgment was affirmed on appeal to the Minnesota Supreme Court, after which the United States Supreme Court granted certiorari and the Supreme Court of Minnesota was affirmed. The Supreme Court of the United States noted that the tax was stated in the assessment to be on the realty, subject to the fee title remaining in the United States of America.

We have the same problem presented here in that buyer claims the property was exempt from state taxation because the legal title to all of the property remained in the United

States and it is on that premise that buyer makes its objection.

This court has determined in this opinion that the contract between the United States Government and the buyer was an executory contract.

In determining that the Minnesota land purchased under an executory contract was subject to state taxation, the United States Supreme Court stated,

"In determining the meaning and effect of contracts to which the United States is a party, the governing rules of law must be finally declared by this Court. *United States v. Allegheny County, supra,* 183. Turning to the contract, we find in it no characteristics which differentiate it from the normal executory contract for the sale of land with partial payments. Normally, contracts between the United States and others are construed as contracts between private parties. *Lynch v. United States,* 292 U. S. 571, 579, This Court has been of the opinion that contracts for the sale of land transfer to the purchaser the equity in the land.

"We think this contract did so. That equity is realty. It was owned by the vendee. The United States retains only a legal title as security. In substance, it is in the position of a mortgagee. Minnesota has the same rule. *In Re S.R.A., Inc.,* 219 Minn. 493, 507; 213 Minn. 487, 495, 499. Therefore when petitioner entered into possession of this real estate under its contract of purchase, the taxed property by the transfer became subject to the territorial jurisdiction of Minnesota.

"Territorial jurisdiction in Minnesota does not dispose of this tax problem. The nub of this case, that is the immunity from state taxation of property to which the United States holds legal title, remains. Minnesota took care to leave unassessed whatever interest the United States holds. The levy and judgment was 'subject to fee title remaining in the United States of America'. 219 Minn. at 496. Although Minnesota real estate taxes are assessed on the parcel of land as a 'unitary item' including 'all rights and privileges,' the State does not claim that a tax sale will divest the fee title of the United States. 213 Minn. at 493, 499. Apparently the State is of the view that the equitable interest alone may be sold under its laws, leaving the fee of the United States in its position of priority over any interests which may be transferred by the tax sale. 219 Minn. at 513. Such

a construction of the state law is binding upon this Court. It does not impinge upon federal rights. So long as that situation exists, the determination of the State cannot be challenged here. The possibility of repossession by the United States is not enough to block a tax sale in which the paramount rights of the United States are protected." 327 U. S. at pp. 564-566.

Similar results may be found in the following state jurisdictions: *Natural Gas and Oil Corporation v. Waggonner* (La. App. 1963), 151 So. 2d 581; *Bancroft Inc. Corporation v. City of Jacksonville* (1946), 157 Fla. 546, 27 So. 2d 162; *Ken Realty Co. v. State* (1946), 247 Ala. 610, 25 So. 2d 675; *Petition of Edward Hines Lumber Co.* (1952), 196 Ore. 420, 248 P. 2d 720; *Eisley v. Mohan* (1948), 31 Cal. 2d 637, 192 P. 2d 5; *Norbet Corporation v. City of Newark* (1947), 135 N. J. L. 314, 51 A. 2d 541.

There is a marked similarity between the *Minnesota* case, *supra,* and the Minnesota law as stated therein, and the Indiana law, as well as the facts stated in the Minnesota case, and the facts of the contract entered into between the United States Government and the buyer. The Indiana law follows the Minnesota law with respect to the relationship of the parties whenever real estate is sold by executory contract.

This similarity is established by the case of *Bucher v. Young* (1928), 94 Ind. App. 586, 158 N. E. 581 (transfer denied), in which this court stated,

"It is a well established principle of equity that pending the completion of an enforceable executory contract for the sale of real estate, the real estate is, as to the vendor, regarded as converted into personalty from the time of the execution of the contract. . . ."

"Applying the principle stated to the facts in this case it follows that by reason of the contract for the sale of the land in question, the vendees, at the time of the execution of the contract, became the owners of the equitable title thereof, . . . . Although the legal title remained in Young (vendor) he held it in trust for vendees, and as security for the unpaid purchase price."

Buyer attempts to distinguish the *Minnesota* case, *supra*, by contending that local taxing authorities have attempted to levy a direct tax on the real estate and that, in fact, tax statements were issued in the name of and mailed directly to the United States Government and no attempt was made to levy on whatever interest the buyer had in the property.

With this we cannot agree. All of the notices of assessment prepared by the County Treasurer on the real estate for the years involved clearly indicate that the land in question was in the name of the United States of America and its assigns, Midwest Associates, Inc., c/o John Burton, Jr., No. 4, Windridge, Anderson, Indiana.

In the *Minnesota* case, *supra*, the State of Minnesota took care to leave unassessed whatever interest the United States holds. Certainly, that is analogous to the case at bar. The court, in that case, said "although Minnesota real estate taxes are assessed on the parcel of land as a 'unitary item' including 'all rights and privileges' the state does not claim that a tax sale will divest the fee title of the United States." 327 U. S. at p. 565. The record here discloses that appellants never, at any time, tried to divest the United States of its interest or impose a tax thereon, as evidenced by their notices of assessment.

The record further discloses that upon receipt of the notices the United States Government promptly forwarded such notices to the buyer for payment of any taxes which might be due to the State of Indiana, pursuant to the terms of the "Contract for Deed".

The fact that these notices were sent to the United States of America is a ministerial act of a county official and is not binding upon this court as to ownership of the legal or equitable title to said land; it is merely evidence that the record title was in the United States Government and its assigns, Midwest Associates, Inc.

We find in the "Contract for Deed" no characteristics which differentiate it from the normal executory contract for the sale of land with partial payments. As stated in the *Minnesota* case, *supra*, "normally contracts between the United States and others are construed as contracts between private parties." 327 U. S. at p. 564.

Indiana, in the case of *Bucher v. Young, supra,* follows the reasoning of the Minnesota case. It is therefore our opinion that in this instance the contract for the sale of land transferred to the purchaser the equity in the land which equity is realty; the ownership being in the vendee. The seller, be it a sovereign power, an individual or a corporation, retains only a legal title as security and is, in substance, in the position of a mortgagee. When the buyer entered into possession of this real estate under its contract of purchase, the equity in the land became subject to the jurisdiction of Indiana.

In the case at bar, like the *Minnesota* case, *supra*, territorial jurisdiction does not dispose of the tax problem. We still have the problem which is the immunity from state taxation of property in which the United States holds legal title. Indiana real estate taxes are assessed on the parcel of land, including all rights and privileges pertaining thereto and in our opinion the state does not claim that a tax sale will divest the fee title of the United States. The state, by and through the proper officials of Madison County, Indiana, gave notice as above referred to, notifying the United States Government and the buyer of the taxes assessed on said land. It is our opinion that the equitable title, having vested in the buyer under the terms of the contract, was taxable to the buyer and the buyer having had due notice of the assessment and having failed to pay the taxes on its equitable interest, cannot hide behind the shield of the United States Government as owner of the legal title. We believe that the equitable interest alone may be sold under our laws, leaving the fee of the United States in its

position of priority over any interest which may be transferred by the tax sale.

For the reasons above given the judgment of the trial court is reversed with instructions to dissolve the permanent injunction heretofore granted and to enter its judgment in conformity with this opinion.

The court now orders costs taxed to appellee.

Carson, Cooper and Sullivan, JJ., concur.

NOTE.—Reported in 249 N. E. 2d 240.