## BD. OF COMMISSIONERS OF MADISON COUNTY *v.* MIDWEST ASSOCIATES, INC.

[No. 568A95. Filed April 1, 1969. Rehearing denied May 12, 1969. Transfer denied with opinion March 3, 1970. See 144 Ind. App. 264.]

*Walter C. Dietzen* and *Richard E. Kreegar,* of Anderson, for appellants.

*Arch N. Bobbitt, Ruckelshaus, Bobbitt & O'Connor, Theodore R. Dann, Dann, Backer, Pecar & Newman,* of Indianapolis, and *Harold J. Anderson, Schrenker & Anderson,* of Anderson, for appellee.

ARTERBURN, J.—Appellee has filed a petition to transfer this appeal from the Appellate Court as a result of an opinion by that court holding that the real estate purchased on an installment contract from the U. S. Government was taxable as to the interest held by the purchaser. (See Appellate Court Opinion at 245 N. E. 2d 853.)

We have come to the conclusion that the transfer should be denied not only for the reasons given in the Appellate Court opinion but for the reasons which we desire to elaborate more fully.

The Appellate Court opinion is based upon the proposition that the buyer on contract of real estate from the United States has an equitable interest of real value that should be taxed, and as a matter of law, this is correct. The Federal Government apparently felt the same way

about it when it provided in the contract with this purchaser that he should pay all taxes, to wit: "Buyer will, while any of the indebtedness secured hereby remains unpaid *pay* before they become delinquent *all taxes,* both general and special, assessments and governmental charges lawfully levied or assessed against the above-described property or any part thereof . . ." That contract for the benefit of governmental taxing units is a third party beneficiary contract which the taxing units have a right to enforce against the appellee, and therefore the trial court had no right to issue an injunction against the enforcement of such a contractual right; nor may a party come to a court of equity and in the face of such a promise ask for a restraining order against the enforcement of his own promise to pay the taxes.

Further, all property should be taxed under our state law unless there is a special exemption provided by statute. This statute on exemption being Burns' Ind. Stat. Ann. § 64-201 read as follows:

"Exemptions enumerated—The following property shall be exempt from taxation:

First. The property of this state; and the property of the United States, its agencies and instrumentalities *to the extent that this state is prohibited by law from taxing said property* of the United States, but any *right,* title, *interest,* lien claim or lease held in, on, to or of said property *shall be assessed and taxed* as other property is assessed, and taxed to the extent that this state is not prohibited from taxing the same by the Constitution of the United States." (Emphasis added)

It will be noted that no property is exempt unless constitutionally it has to be. There is no provision in the Constitution of the United States that prevents taxation in this case. Therefore that provision has no relevancy here. At the same time it will be noted that this statutory provision does say in mandatory language "but any *right,* title, *interest,* lien claim or lease held in, on, to or of said property *shall* be

asessed and taxed as other property is assessed and taxed
. . ." (Emphasis added)

This language is the answer to the case and sustains the
Appellate Court's position that this property and any right
therein, including contract rights, or equitable title shall be
taxed. The taxing authorities were merely following the man-
datory provisions of this statute.

The contention that the legislature should pass a law pro-
viding for the taxation of equitable interests owned by persons
in U. S. lands is not sustainable, since the legislature has done
that very thing under the statute cited above.

Finally, we point out that appellee has not exhausted its
administrative proceedings and remedy before coming into
court. Burns' Ind. Stat. Ann. § 64-501 *et seq.* provide
for filing applications for tax exemptions with the
county auditor and for appeals and review thereof
before the County Board of Review and the State Board of
Tax Commissioners. This was not done by the appellee. All
appellee did was file an untimely petition before the State
Board "To establish ⅓ of true value," not for an exemption
from taxation.

Appellee says the attempt to tax is entirely "void" in this
case and not merely voidable, and therefore it had the right
to go directly into court and enjoin the act without following
the administrative remedy first. To say that an act is void or
voidable is a far too frequent refuge for an easy decision
which has no real substance. No court or judge has yet been
able to satisfactorily define adequately the distinction between
these terms. To a large extent the attempt degenerates into a
question of sematics and not law. Here the statutes cited above
gave jurisdiction to hear petitions for exemptions to the tax
boards and they certainly had jurisdiction of the subject mat-
ter. Their proceedings certainly had some validity and were

not totally void. For the reasons stated the petition to transfer is denied.

Givan and DeBruler, JJ., concur; Jackson, J., concurs in result. Hunter, C.J., dissents with opinion.

## DISSENTING OPINION

HUNTER, C.J.—I dissent from the denial of transfer in this cause.

This is an appeal from the Superior Court of Madison County, brought by appellants, Board of Commissioners of that county, which appeal stems from the issuance of a restraining order without notice and a temporary injunction enjoining appellants from selling certain real estate at a tax sale. The appellee, Midwest Associates, Inc., an Indiana corporation and owner of the said real estate, filed a verified petition to prevent its sale on the grounds that it owed no property taxes thereon and therefore was not in default of payment. Appellee contends that the tax sale would be illegal. The trial court found for appellee and issued the requested orders. Appellants appealed the decision to the Appellate Court, *Board of Commissioners of the County of Madison* v. *Midwest Associates, Inc.* (1969), 144 Ind. App. 551, 245 N. E. 2d 853. That court reversed the judgment of the trial court with instructions to dissolve the injunction thereinbefore granted.

The questions presented by this petition to transfer may be summarized as follows: (1) *Under Indiana law*, may real property the legal title to which is held by the United States Government, be taxed against a buyer thereof under an executory contract to purchase where the buyer has the beneficial use and enjoyment of the property? (2) Can the courts of this state, consistent with our tax statutes, order a sale of real property to satisfy delinquent real estate taxes, which sale preserves the fee of the United States in a position of priority over all other interests transferred by the sale?

The property in question, formerly known as Air Force Plant #46, was purchased from the United States of America, acting by and through the General Services Administration by appellee, Midwest Associates, Inc. Said purchase was evidenced by a "Contract for Deed," executed on February 17, 1960, by and between the U. S. Government, and individuals operating as a partnership, which later incorporated as Midwest Associates, Inc., hereinafter referred to as "buyer." The contract provided that if the buyer shall make payments and perform the covenants mentioned on their part to be made and performed, then the United States covenanted and agreed to convey, without warranty, express or implied, said property by quitclaim deed to buyer. The agreed purchase price for said real estate and personal property was $340,000, of which $34,000 was to be paid at the time of the execution of the contract, and the sum of $3,825 every three months thereafter, together with interest on the unpaid balance, until one-third of the purchase price and all accrued interest have been paid. When the above sum had been so paid, the U. S. Government agreed to deliver to the buyer its quitclaim deed without representation or warranty of any kind or nature, together with a bill of sale for the personal property involved, and the buyer agreed to execute and deliver to the U. S. Government a promissory installment note for the remaining balance of the purchase price together with a purchase money mortgage on the real property and a chattel mortgage on the personal property to secure the payment of said note. On February 22, 1960, the U. S. Government notified the buyer to take possession of the land and its appurtenances and certain personal property and the same was done.

On June 15, 1965, the Government, pursuant to the contract, delivered to the buyer a quitclaim deed to the land, which was duly entered for taxation and recorded September 8, 1965. Although title to the property had been since August 20, 1953, until June 15, 1965, in the name of the U. S. Government, taxes have been assessed against it by appellants begin-

ning with the year 1962 and continuing through June of 1965. The tax liability [and penalty for non-payment] for this period is $73,158.17, which amount, appellee contends, should not have accrued since the owner of the property was the U. S. Government, it (appellee) was only entitled to the use thereof. In short, appellee argues that since the property in question was owned by the U. S. Government until June 15, 1965, it should have been, up until that time, exempt from taxation under Ind. Ann. Stat. § 64-201:

> "Exemptions enumerated.—The following property shall be exempt from taxation: First . . . the property of the United States, its agencies and instrumentalities, to the extent that this state is prohibited by law from taxing any property of the United States, . . ."

To resolve the important question raised by the facts of this case, reference must be made at the outset to the pertinent tax statutes in Indiana. That the subject property is real property is undisputed. Ind. Ann. Stat. § 64-304 (1969 Supp.):

> ". . . the term 'real property' means all land and lots within the state and all buildings and fixtures thereon and appurtenances thereto, . . ."

As to real property, the statute provides the place of, and the person to whom assessment shall be made.

> "Real property shall be assessed at the place where situated. Such property shall be assessed *to the owner,* if known; if not, then to the occupant, if any; and if there be no occupant or owner known, then as unknown, except as otherwise provided in this act." (my emphasis) Ind. Ann. Stat. § 64-701.

Critical to the resolution of the question in this case is the statutory definition of the word "owner." The meaning of that term *for the purposes of taxation* is contained in Ind. Ann. Stat. § 64-308 which provides as follows:

" 'Owner' defined. — For the purposes of this act, the 'owner' of any property shall be determined by using the following rules:

(a) Except as otherwise provided in this section, the holder of the legal title in the case of personal property or *the legal title in fee in the case of real property* shall be deemed the owner.

(b) When title to real or personal property passes on the assessment date of any year, only the person obtaining title shall be deemed to have title on that assessment date.

(c) When the mortgagee of real property is in possession of the mortgaged premises, such mortgagee shall be deemed the owner.

(d) When personal property is security for a debt and the debtor is in possession of such property, such debtor shall be deemed the owner.

(e) When a life tenant is in possession of real property, such life tenant shall be deemed the owner." (my emphasis)

There is neither doubt nor dispute that until the United States Government executed its quitclaim deed to appellee buyer in June of 1965, it held legal title in fee to the property in question. As holder of that title, it would have been taxed as the *owner* of said property but for its exempt status under § 64-201, *supra*. Were the seller here a private party rather than the U. S. Government there is no question that, absent a private agreement to the contrary, the seller would be liable for the real estate taxes thereon until such time as the legal title passed.

It is clear that in order to assess property taxes against appellee in this case under § 64-701, *supra*, it is necessary to reach the conclusion that the buyer under an executory contract for the sale of real estate, becomes the "owner" of same *for tax purposes* as soon as the contract is entered into. However no amount of stretching and twisting of § 64-308, *supra, short of judicial legislation,* can compel such a conclusion. Under the clear language of that statute, the *owner* of the property during the period in dispute in this case can be none other than U. S. Government. To hold otherwise would be

to judicially amend our tax laws to invade the province of the legislature—in doing so the majority of this court is surely guilty of letting the end justify the means.

There is little question that under *equitable* principles, the judicial view taken of an executory contract for the sale of land differs markedly from that recognized at law. The law views the rights and duties arising out of an executory contract as personal in nature, to-wit: each party has the right aganist the other that the contract shall be fulfilled according to its terms and the right to pecuniary compensation for a breach thereof. Equity takes quite a different view:

> ". . . equity says that from the contract, even while yet executory, the vendee acquires a 'real' right, a right of property in the land, which though lacking a legal *title,* and therefore equitable only, is none the less the real, beneficial ownership, subject, however, to a lien of the vendor as security for the purchase-price as long as that remains unpaid . . . In short, equity regards the two contracting parties as having changed positions, and the original estate of each as having been 'converted,' that of the vendee from personal into real property, and that of the vendor from real into personal property . . ." (my emphasis) Pomeroy's Equity Jurisprudence, Fifth Edition, § 105, p. 135-6.

Although this principle is well settled in Indiana, see e.g. *Bucher* v. *Young* (1928), 94 Ind. App. 586, 158 N. E. 581, it has no application in the case at bar. The authority to tax appellee, if such authority exists, does not derive from principles of equity, it rests squarely in our tax law. However compelling the equitable basis for assessing a tax may be in the case at bar, the fact remains that under Indiana tax law, such an interest is not defined as taxable "real property" pursuant to the terms of § 64-304, *supra,* nor is appellee a taxable "owner" as defined in § 64-308, *supra.* The fact that the "owner" of the real property in question is the United States Government and is tax exempt, cannot in and of itself be a legal basis for shifting the tax burden to the appellee. If this is to be the law then it requires appropriate legislative action.

This court cannot and must not look outside our tax law for the power to tax.

Moreover, it is well settled that the doctrine of equitable conversion was adopted for the purpose of *giving effect to the intention of the contracting parties.* It is bottomed on the principle that equity regards things which are directed to be done as having actually been done. As to the time at which conversion of interests is to take place under a contract for the sale of real property, the following is noted:

> "As a general rule, where property passes under a contract . . . conversion operates from the time of the execution of the instrument. *However the intent of the instrument should be effectuated, and the general rule will not prevail where its application will defeat the apparent intention of the parties. Accordingly, when a definite time is specified in an agreement for the sale of real estate and its conversion into personalty, the conversion ordinarily does not take place until that specified time has arrived.*" (my emphasis) 27 Am. Jur. 2d "Equitable Conversion" § 15.

See also Pomeroy's Equity Jurisprudence, Fifth Edition, § 1162 Conversion of Property, p. 474. The contract between the U. S. Government and appellee in this case contained the following provision:

> ". . . the title and ownership of said property shall remain in the seller or its assigns and no right, title or interest in said property either legal or equitable shall pass by virtue of this agreement, until said purchase price shall have been paid in accordance with the terms of this Contract for Deed, and all the terms and conditions of this agreement fully complied with."

For the majority of this court to apply the doctrine of conversion at the time the instrument was executed rather than as set forth in the above contractual provision, it would be in clear contravention of the expressed intention of the parties. *Unless by doing so, the parties would be evading duties and obligations imposed upon them or on the transaction by statute,* they should be free to set the terms of their agreement

without judicial interference. Since no such tax statute is contravened by this agreement, I believe that the conversion in this case should not be deemed to have taken place until such time as the contractual obligations specified by the parties have been fulfilled. This, in my view, occurred in June of 1965, when the seller executed its quitclaim deed to the buyer.

This case is not unlike the New Jersey cases of *ABR Corporation* v. *City of Newark* (1944), 131 N. J. L. 147, 35 A. 2d 473, and *Norbet Corporation* v. *City of Newark* (1947), 135 N. J. L. 314, 51 A. 2d 541. In *ABR Corporation* the U. S. Government sold certain real property to a private purchaser under an executory contract whereby title was retained by the government during a ten year period while the purchaser made installment payments for same. At the end of that period the government was to execute a quitclaim deed to the buyer and the buyer was to deliver a purchase-money mortgage back to secure the balance of the purchase price. In denying the City of Newark the right to assess real property taxes against the buyer during that period, the New Jersey Supreme Court held that the buyer was not the "owner" of the property under R. S. 54: 4-1, N. J. S. A. That statute described the property subject to taxation in New Jersey and, like our own, did not treat as real property the buyer's interest in land under an executory contract.

In 1946 the New Jersey legislature enacted the following amendment:

> ". . . An executory contract for the sale of land, under which the vendee is entitled to or does take possession thereof, shall be deemed, for the purpose of this act, a mortgage of said land for the unpaid balance of purchase price . . ." L. 1946, C. 242.

Accordingly, in *Norbet* where the question was identical to that raised in *ABR Corporation*, the New Jersey Supreme Court reversed itself. The court examined the statutory amendment passed the year before and stated:

". . . This amendatory provision was enacted for the purpose of taxation of properties purchased on long-term contracts from the federal government so that municipalities may not be deprived of their opportunity to secure legitimate tax revenues and in order that competing businesses are not placed at an unfair disadvantage . . . the prosecutor . . . contends that under the executory contract for the purchase of property it has no taxable interest, relying mainly on *ABR Corporation* v. *City of Newark* [citation omitted]. *That case, however, is inapplicable since the court did not have before it a statute which expressly made taxable a vendee's interest under a contract to buy realty.*" (my emphasis) 51 A. 2d at 542.

In the absence of such a statutory provision in our law, I can only conclude as the New Jersey court did in the *ABR* case, *supra,* that no tax should have been assessed.

In its opinion in this case, the Appellate Court relied chiefly on the case of *S. R. A., Inc.* v. *Minnesota* (1946), 327 U. S. 558, 90 L. Ed. 851, in support of its holding that appellee was taxable as the property owner before legal title had passed. In that case the U. S. Government sold realty located in Minnesota to a private concern under an executory contract of sale whereby the purchaser immediately took possession thereof, with legal title passing to the buyer upon completion of certain annual installments paid to the seller. The State of Minnesota levied real estate taxes against the property, and the purchaser, as appellee did in this case, objected thereto claiming an exemption because the legal title was held by the United States. The trial court held that the property was not exempt from state taxation. This judgment was affirmed on appeal to the Minnesota Supreme Court, *S. R. A., Inc.* v. *State* (1942), 213 Minn. 487, 7 N. W. 2d 484, which appeal was affirmed by the U. S. Supreme Court. *S. R. A., Inc.* v. *State, supra.*

"Normally contracts between the United States and others are construed as contracts between private parties. *Lynch* v. *United States,* 292 U. S. 571, 579, 78 L. Ed. 1434, 1440, 54 S. Ct. 840. This court has been of the opinion that con-

tracts for the sale of land transfer to the purchaser the equity in the land. We think this contract did so. That equity is realty. It was owned by the vendee. The United States retains only a legal title as security. In substance it is in the position of a mortgagee. Minnesota has the same rule. [citations omitted] . . . To say that the payment of the purchase price is a necessary condition precedent to the loss of federal immunity is to make the rule too mechanical. It should be sufficiently flexible to subject *real private rights, disentangled from federal policies, to state taxation* . . . Where beneficial interest has passed to a vendee, the retention of legal title does not give a significant difference from the situation of a deed with a lien retained or a mortgage back to secure the purchase money . . ." (my emphasis) 327 U. S. at 565, 569.

Although it should be conceded that the decisions of the Minnesota Supreme Court and U. S. Supreme Court were both correct on their facts, these cases can readily be distinguished from the case at bar. The Minnesota decision to tax the property to the buyer, which was affirmed by the U. S. Supreme Court *was based squarely and properly on Minnesota's tax laws.* In *S. R. A., Inc.* v. *State, supra,* the Minnesota Supreme Court set out the controlling statute as follows:

"By L. 1907, c. 328, § 1, now Minn. St. 1941, §§ 287.01, 287.02, 287.03, 287.04, Mason St. 1927, § 2322, it was provided: 'The words 'real property,' 'real estate' and 'land,' as used in this act, in addition to the definitions thereof contained in the Revised Laws 1905, shall include all property a conveyance whereof may be recorded or registered by a register of deeds under existing laws; and the word 'mortgage,' as so used, shall mean any instrument creating or evidencing a lien of any kind on such property, given or taken as security for a debt, notwithstanding such debt may also be secured in part by a lien upon personalty. *An executory contract for the sale of land, under which the vendee is entitled to or does take possession thereof, shall be deemed, for the purposes of this act, a mortgage of said land for the unpaid balance of the purchase price.*" (my emphasis) 7 N. W. 2d at 488.

The presence of this statutory provision in Minnesota like that noted in New Jersey in *Norbet, supra,* renders any reli-

ance on those two cases erroneous for the purpose of resolving the dispute before us. Moreover nothing in the U. S. Supreme Court's opinion in *S. R. A., supra,* contravenes this conclusion There the court discussed extensively the equitable concepts involved in executory contracts for the sale of realty and approved the right of the states to tax such an interest. However the court's chief concern in that case was the protection of the interests of the U. S. Government in the event of a tax sale.

> *"Apparently the state is of the view that the equitable interest alone may be sold under its laws, leaving the fee of the United States in its position of priority over any interest which may be transferred by the tax sale.* 219 Minn. at 513, 18 N. W. 2d 453. Such a construction of state law is binding upon this court. It does not impinge upon federal rights. *So long as that situation exists, the determination of the state cannot be challenged here.* The possibility of repossession by the United States is not enough to block a tax sale in which the paramount rights of the United States are protected . . ." 327 U. S. at 565-6, 90 L. Ed. at 858 (my emphasis)

Similarly the several cases cited in the Appellate Court's opinion in support of *S. R. A., Inc., supra,* can each be distinguished from the case at bar. The following additional authority was therein cited: *Natural Gas and Oil Corp.* v. *Waggoner* (La. App. 1963), 151 So. 2d 575; *Bancroft Inv. Corp.* v. *City of Jacksonville* (1946), 157 Fla. 546, 27 So. 2d 162; *Ken Realty Co.* v. *State* (1946), 247 Ala. 610, 25 So. 2d 675; *Petition of Edward Hines Lumber Co.* (1952), 196 Ore. 420, 248 P. 2d 720; *Eisley* v. *Mohan* (1948), 31 Cal. 2d 637, 192 P. 2d 5.

The holding in *Natural Gas and Oil Corp.* v. *Waggoner, supra,* that the private lessee of a parcel of land leased from the U. S. Government which was used for non-governmental purposes is susceptible to state taxation, was reversed by the U. S. Supreme Court in 1964 and thus is without effect here. See *Humble Pipe Line Co.* v. *W. E. Waggoner* (1964), 376

U. S. 369, 11 L. Ed. 2d 782. In *Bancroft Inv. Corp., supra,* the Florida Supreme Court determined in light of *S. R. A., Inc., supra,* that the equitable owner is the owner of the taxable interest in real estate and is thus amenable to taxation under the laws of Florida. However, an examination of the Florida tax statutes in effect at the time, Fla. Stat. Ann. §§ 192 and following, reveals that there was no statutory definition of owner comparable to our § 64-308, *supra.* Unrestricted by specific statutory language defining ownership, the Florida court was at liberty to judicially interpret the meaning of that word. The authority to tax the buyer in that case derived from a judicial rather than a legislative definition of the term "owner."

The same distinction can be made in the case of *Ken Realty Co.* v. *State, supra.* In that case the Alabama Supreme Court looked to Code of Ala., Tit. 51, § 79, for the definition of the word "owner" for tax purposes. Under that statute the word owner included all persons owning land *or owning any interest therein.* The authority to tax an equitable interest under Alabama law was clear. That case was in fact decided before the U. S. Supreme Court had acted in *S. R. A., Inc.*

The case of *Petition of Edward Hines Lumber Co., supra,* was decided under a statute which specifically legalized taxation of real property of the United States which was held under a contract of sale so long as the interest of the United States in such real property was not impaired. Ch. 202 Ore. Laws, 1947 [See Ore. Rev. Stat. § 307.050]. No such statute exists in Indiana.

Lastly it is evident that the holding in the case of *Eisley* v. *Mohan* is inapplicable for two reasons: (1) because the land to be sold was owned by the state and not the federal government, the rights therein being wholly determined by California law, and (2) because the entire transaction in that case arose under the California Veterans Farm and Home Purchase Act, whereto the California Supreme Court looked in

great part in arriving at its decision. We are not so compelled in this case.

Research into these cases as well as into the tax statutes of the several states leads to the conclusion that the propriety of a particular state tax assessment must be tested (1) against the federal law *and* (2) against the applicable state law. It is apparent from the holding in *S. R. A., Inc., supra,* that a state may assess property taxes against the equitable owner of property the legal title to which is held by the U. S. Government. Such property may even be sold to satisfy that tax liability *so long as the rights of the U. S. Government are protected.* There is no question that the appellee in this case could legally be assessed these real property taxes *under federal law* if the interest of the U. S. Government could be protected in a tax sale in Indiana.

It should be noted in this regard however, that the majority opinion in this case fails to explain how such an interest can be protected in a tax sale in view of the express statutory language contained in Ind. Ann. Stat. § 64-2278 (1969 Supp.) which provides:

> "Execution of tax deed.—. . . A deed shall vest in the grantee *an estate in fee simple absolute, free and clear of all liens and encumbrances except the lien of the state for taxes* and special assessments accruing subsequent to the sale . . ." (my emphasis)

Notwithstanding the above, it is clear that it is the second test which appellants fail to satisfy. Although permitted under federal law, the real estate tax assessment levied against the appellee in this case is invalid under Indiana tax law for the reasons discussed above. Unless the federal law permits and the state law authorizes and implements the assessment and collection of the tax, it is void. The fact that Minnesota law imposes a tax on the buyer under an executory contract of sale of tax-exempt property, and the U. S. Supreme Court upholds its right to do so, does not mean that such a tax is authorized

and implemented in Indiana. Indiana taxes are imposed under statutory authority only after enactment by the Indiana General Assembly.

My dissent would be incomplete without a discussion of appellants' second argument presented by their assignment of error and briefs before the Appellate Court. The holding of that court made it unnecessary for it to deal with the question which may be summarized as follows:

> Did the trial court commit reversible error by overruling appellants' motion to set aside the temporary injunction and restraining order because the appellee, in seeking this equitable relief, had an adequate remedy at law?

The appellants assert that there were two legal remedies available to appellee which were not exhausted prior to their seeking injunctive relief. The two remedies are the right to petition for a reassessment [Ind. Ann. Stat. § 64-716 (1969 Supp.)], and the right to a refund of taxes which were improperly paid [Ind. Ann. Stat. § 64-2081]. In support of this assertion, appellants offer the following:

> "In actions for injunctive relief, ordinarily the burden rests on the plaintiff to establish his right to such relief, and the burden rests on the defendant to prove matters of affirmative defense. Thus plaintiff must show, among other things, his right, title, or interest in the property involved, that he will suffer substantial injury unless an injunction is granted, and that the injury will be irreparable or great, and that he has no adequate remedy at law." I. L. E., Vol. 16, *Injunction*, Section 123.

Appellants conclude that since appellee failed to make use of the above remedies, that it did not present sufficient evidence to sustain the trial court's decision.

As a general proposition appellants' contention is correct, that is, that equitable relief is available only where there is no adequate remedy at law. However this court has recognized long ago that where property is not subject to taxation, the assessment thereof for such purpose is void and may be re-

strained by injunction irrespective of the existence of other rights. In *Croop* v. *Walton* (1927), 199 Ind. 262, 157 N. E. 275, where the issue raised was the propriety of injunctive relief, this court stated that:

> "If the omitted property is subject to taxation and the amount assessed is erroneous, the taxpayer has the 'right to appeal,' under the statute quoted, and he also has the right to file a claim for a refund under Section 14376, . . . *but where the property is not subject to taxation the assessment is void, and its collection can be restrained by injunction, regardless of the right to appeal or to file a claim for refund.*" 199 Ind. at 265 ( my emphasis)

This proposition is well settled not only in Indiana, see *Board of Tax Commissioners* v. *McDaniel* (1928), 199 Ind. 708, 160 N. E. 347; *McCreery* v. *Ijams* (1945), 115 Ind. App. 631, 59 N. E. 2d 133; *Scott, County Treasurer* v. *Abke* (1960), 130 Ind. App. 199, 163 N. E. 2d 257; *Sluder* v. *Mahan, Treasurer of Sullivan County* (1954), 124 Ind. App. 661, 121 N. E. 2d 137; *Department of Treasury* v. *Ridgely* (1936), 211 Ind. 9, 4 N. E. 2d 557, but also in jurisdiction throughout the United States, see: 84 A. L. R. *Injunction,* § 142.

An examination of the record below reveals that on March 28, 1966, appellee filed a petition for reassessment with the State Board of Tax Commissioners in accordance with § 64-716, *supra*. Appellee did so upon the advice and at the instance of the then Chairman of the State Board of Tax Commissioners. That petition was still pending or otherwise undisposed of when appellee received notice that its property was being advertised to be sold at a tax sale on August 14, 1967. It would have been an exercise in futility to say the least for appellee to have exhausted this remedy [§ 64-716, *supra*] before seeking an injunction. There is little doubt that its property would have long since been sold had appellee waited for the Board of Tax Commissioners to act. A victory under such circumstances would have been an empty one indeed.

As to its right to file a claim for a refund under § 64-2081,

*supra,* notice should be taken of the language set out in *State Board of Tax Commissioners* v. *McDaniel, supra,* where this court said:

"... that equity will come to the rescue of one under duress because of a void act. A party is not required to follow the legal route prescribed in law to overcome an order that is void. Where he desires to free himself of a void administrative order which, if executed, would deprive him of his property, he may resort to equity for instant relief." 199 Ind. at 717, 718.

Where *the entire* tax sought to be collected is void, there is no requirement that appellee tender or pay the same as a condition precedent to seeking equitable relief *McCreery* v. *Ijams, supra.* A tax that is void is void from its inception, i.e., void *ab initio.* There is therefore, no legal basis upon which appellee can be compelled to pay such a tax. Should a court in subsequent adjudication determine that the tax were valid, then there is no question that not only would it be due and payable, but that appellee would also be liable for all penalties and interest accrued for non-payment thereof. Its position is not one without substantial financial risk. Thus it seems clear that appellee's pursuance of equitable relief, to-wit: a restraining order and an injunction, was proper.

The majority of the members of this court rely for authority to tax appellants on § 64-201, *supra,* which states in part that:

"... any right, title, interest, lien claim or lease held in, on, to or of said property [of the United States Government] shall be assessed and taxed as other property is assessed, and taxed to the extent that this state is not prohibited from taxing the same by the Constitution of the United States."

In the first place, although this provision states that any right, title, interest, lien or claim shall be taxed as other property, it is not self-executing and *there are no specific implementing sections of our tax law* which give effect to it. Presumably

my colleagues believe that the equitable ownership of property the legal title to which is in the U. S. Government shall be taxed just as any other equitable ownership of property is taxed. However the question which the majority does not and cannot answer is, where in our tax law is the equitable owner of *any* real property required to pay taxes thereon? The answer is that the equitable owner of the property is not subject to the real property tax in Indiana. § 64-308 (a), *supra.*

Secondly, neither the Appellate Court in their opinion nor the appellants in their brief before that court argue that the above exemption statute is the basis for the authority to tax. And indeed I feel rightly so. For the majority of this court to raise this argument for the first time on appeal is a violation of the rules of appellate review. The application of such rules is particularly an onerous violation for the reason that the end result is to reverse the trial court.

However strong the public policy reasons may be in favor of the imposition of a tax under the facts and circumstances existing in this case, there is a far greater public interest in seeing that the General Assembly and not the courts enact the tax laws in this state. Ind. Constitution, Art. 10, Sec. 1.

It is not the function of this court to determine what the law ought to be, but rather it is its function to judge the law as it exists. I therefore dissent to the denial of transfer.

NOTE.—Reported in 255 N. E. 2d 807.