STARK ET AL. *v.* KREYLING.

[No. 26,421. Filed January 31, 1934. Rehearing denied October 8, 1934.]

James F. Ensle, Willis C. Nusbaum, Philip Zoercher, and Lorin H. Kiely, for appellants.

Edward A. Lorch and Daniel H. Ortmeyer, for appellee.

TREANOR, J.—The action which occasioned this appeal was brought by appellee Kreyling against the board of county commissioners of Vanderburgh county, Indiana, to recover judgment for a refund of county and state taxes paid on property which had been listed for taxation as omitted property. Kreyling first filed a petition before the board of commissioners and, when the board denied the claim, he appealed to the superior court of Vanderburgh county, where he received judgment for the amount claimed.

The pertinent facts are as follows: The Willard Library Association, vendor, and Wilhelm Kreyling, vendee, entered into a written contract for the sale and purchase of a certain piece of real estate. By the terms of the contract $2,000.00 of the purchase price of $20,000.00 was to be paid upon the execution of contract, and the balance of $18,000.00 was to be paid in annual installments of $1,000.00 each. Also the vendee Kreyling agreed to pay all taxes, assessments, charges, liens, and encumbrances against or upon said real estate that should thereafter be against or upon same, when the same should become due and payable. The contract

also provided that upon complete performance by Krey-
ling, the Library Association would "make and execute
to said party of the second part a good and sufficient
deed of general warranty for said real estate." In ac-
cordance with the terms of the contract the vendor
delivered possession of the premises to the vendee who
held and enjoyed the use of the same. The vendee was
in possession of the property from and after January 4,
1923, and did not devote it to any of the uses which
may be the basis of a special exemption from taxation.
It was stipulated that the real estate was exempt from
taxation at the time when the contract was made.

In March, 1928, the county assessor, after due notice,
caused to be assessed against Kreyling, as omitted per-
sonal property, the following amounts: For 1923,
$12,000.00; for 1924, $13,000.00; for 1925, $14,000.00;
for 1926, $15,000.00; for 1927, $16,000.00. Kreyling
paid upon the basis of the foregoing assessments and
then sought reimbursement, claiming that he had been
assessed $10,000.00 too much for each of the years in
question.

·The county assessor and Kreyling assumed that §21
of the 1919 tax statute (Acts 1919, ch. 59, p. 198,
§14061, Burns Ann. Ind. St. 1926, §64-502, Burns 1933,
§15538, Baldwin's 1934) was applicable. That section
is as follows:

"When real estate is exempt from taxation in the
hands of the holder of the fee and the same is con-
tracted to be sold, the amount paid thereon by the
purchaser, with the value of the improvements
thereon until the fee is conveyed, shall be held to
be personal property, and be listed and assessed as
such in the place where the land is situated."

The county assessor construed §21 to mean that the
land continued to be exempt in the possession of Krey-
ling but that all improvements and payments should be
listed and taxed as personal property; Kreyling insisted

that only payments made by him plus the value of improvements added after he took possession should be taxed.

We are of the opinion that §21 properly construed has no applicability to the facts of this case. To arrive at a proper construction of the section and to determine the question of its applicability it is necessary to consider certain rules which are a recognized part of our law of taxation. One of the important rules of convenience is the statutory requirement that ". . . All property of every kind and nature, both real and personal, and wherever situated, owned or possessed, and subject to taxation within the state of Indiana, shall be assessed and valued for taxation purposes, . . . . *on the first day of March in each year in which it is subject to assessment and valuation* for taxing purposes." (Our italics.) (§14034, Burns, etc. 1926, §64-103, Burns 1933, §15516, Baldwin's 1934, §3 ch. 59, Acts 1919, p. 198.) In short, with a few exceptions, only the facts as they exist on the first day of March of each year are material to the determination of questions of assessment and valuation of property for purposes of taxation. This is also true for purposes of exemption. Property either is or is not exempt from taxation according to the situation on the first of March of each year.

The fact that real estate may be exempt from taxation in the hands of the holder of the fee at the time when a contract to sell is made can not prevent its losing its exempt character by reason of subsequent changes in its ownership or use, or both. No class of property is exempt from taxation unless it is "specially exempted by law;" and only property used for "municipal, education, literary, scientific or charitable purposes" can be specially exempted by law. (Art. X, §1, Indiana Constitution). And although the

General Assembly, by appropriate legislative enactment may specially exempt a class of property, subject to constitutional limitations, it can not confer upon any particular piece of property an indelible imprint of non-taxability; and when the facts which bring a particular item of property within an exempted class cease to exist, the particular piece of property necessarily loses its exemption character. The foregoing is recognized by §6 of the 1919 tax law (Acts 1919, ch. 59, etc. §14038, Burns 1926, §64-203, Burns 1933, §15523, Baldwin's 1934) which is merely a legislative declaration of the impotency of the General Assembly to specially exempt from taxation any property which is not devoted to a municipal, educational, literary, scientific, or charitable purpose.

We consider the following facts, as they existed on March 1, 1923, material to the determination of this appeal:

(1) The appellee, Kreyling, was in possession and devoting the property in question to his personal use.

(2) The contract provided that the Willard Library Association "has this day (Jan. 4th, 1923) sold and does hereby agree to convey" and that Kreyling "has this day purchased the following described real estate," etc.

(3) The contract also provided that upon complete performance by Kreyling the Library Association would convey "the fee simple title in .and to the said real estate," etc.

(4) The vendee agreed to pay all taxes that shall *hereafter* be against or upon the real estate.

It follows from the foregoing that on March 1, 1923, the real estate involved in this suit was subject to taxation and should have been listed and taxed as real estate; and if §21 is applicable and requires any interest in, or part of, the real estate to be exempted, §21 must be held to be unconstitutional.

Further, the agreement between the Willard Library Association and Kreyling does not constitute a contract to sell. Under its terms the transaction was a ▮ present sale with legal title reserved. In *Martin* v. *Wise* (1915), 183 Ind. 530, 534, 109 N. E. 745, a transaction under substantially the same agreement was involved in an appeal to this court. The specific question disposed of was whether the unpaid purchase price was assessable as a debt owing to the appellee. The appellee contended that ". . . the taxing officers had no right to assess the amount so unpaid as a debt for the reason that the facts stated show an executory contract for the sale of the land and not a sale; that the title was still in appellee and that for that reason the property was still assessable to him as such; and that to assess him with the unpaid purchase price as a debt owing to him under the contract amounts to double taxation." (*Ibid.* p. 533) This court accepted the reasoning of the Michigan court in the case of *City of Marquette* v. *Michigan, etc., Land Co.* (1903), 132 Mich. 130, 132, 92 N. W. 934, which held that the effect of such contracts as the ones under consideration in *Martin* v. *Wise* and in the instant case is "to vest the equitable title in the vendee leaving the legal title in the vendor as trustee only as security for the debt." The following excerpt, quoted in *Martin* v. *Wise*, discloses the reasoning of the Michigan case:

"The vendor has, in effect, exchanged his property for the unconditional obligation of the vendee, the performance of which is secured by the retention of the legal title. The fact that the vendee, in the case of the land contract, may, when making his final payment, demand a conveyance, does not distinguish the obligation from that of a credit secured by a mortgage, as the mortgagor may, when making his final payment, demand a discharge of the mortgage. The obligations under consideration, therefore resemble, not agreements

to pay future rent, or salary to be earned in the future, or promises to buy merchandise and products to be delivered in the future, but credits secured by mortgages. The resemblance between these obligations and credits secured by purchase money mortgages may best be described by stating that they differ only in this: that the vendor has a remedy to enforce his rights which is not given to the mortgagee, namely, he may take immediate possession of his security. Such an inconsequential difference affords no ground for a legal distinction. The decisions of this court which hold all credits secured by mortgages taxable are therefore, in our judgment, decisive of the proposition under discussion."

In our opinion the *agreement* in the instant case did not constitute an executory contract for the sale of real estate but constituted a present sale and purchase, the result of which was that the vendor "has, in effect, exchanged his property for the unconditional obligation of the vendee, the performance of which is secured by the retention of the legal title."

When §21 is analyzed in the light of the foregoing facts and legal consequences thereof it is obvious that §21 is not involved in this case. Appellee frequently refers to §21 as a "tax exemption statute"; but it does not purport by its own force to create or continue any exemption. It merely designates the taxation situs of certain things of value and requires that they be treated as personal property when they are connected with tax exempt real estate under certain conditions, i. e. "when real estate is exempt from taxation in the hands of the holder of the fee and the same is contracted to be sold." If the foregoing facts exist then the "amount paid thereon by the purchaser, with the value of the improvements thereon until the fee is conveyed, shall be held to be personal property, and be listed and assessed as such in the place where the land is situated." But on the

first of March, 1923, the real estate in question was not exempt in the hands of the holder of the fee and was not "contracted to be sold." It was taxable in the hands of the appellee and had been sold to him. Consequently §21 can not apply since the facts which, by its very terms, are indispensably necessary to its operation, do not exist. We can easily imagine a situation governed by §21. A school corporation might have a piece of real estate which it is using for school purposes and which it desires to sell. Assume that on the 1st day of January, 1923, the school corporation had agreed to sell the real estate to A, but reserved possession and use of same until the 10th of the following June, at which time conveyance was to be made. On the first day of March, 1923, the real estate would have been exempt from taxation in the hands of the holder of the fee and would have been "contracted to be sold." Then by the operative terms of §21 the amount paid thereon by the purchaser, with the value of the improvements thereon, had to be treated as personal property for listing and assessing. Appellee urges that the force of the phrase "until the fee is conveyed" is to define, or describe, the improvements which are to be taxed, i. e. "the value of any improvements added by him (the purchaser) after the contract is executed and before the fee is conveyed." We understand the force of the words to be a limitation on the time within which the "amount paid" and "improvements thereon" will be listed and assessed as personal property. Evidently the General Assembly contemplated that the real estate would become taxable as such as soon as the fee should be conveyed to the purchaser. Consequently we believe that the legislative intent in §21 is to remove the exemption of that part of the real estate which consists of improvements.

It follows from what we have said that the real estate,

including all improvements, was taxable as real estate on March 1, 1923. Furthermore we are of the opinion that appellee Kreyling was the owner for purposes of taxation. The Willard Library Association had retained the bare legal title for the purpose of enforcing its rights under the contract, but had divested itself of any beneficial interest in the property. All benefits and burdens of ownership had devolved upon Kreyling by the terms of the agreement, including the burden of taxation. Under identical facts in the case of *Bowls* v. *City of Oklahoma City* (1909), 24 Okla. 579, 581, 585, 104 Pac. 902, 24 L. R. A. (N. S.) 1299, the Supreme Court of Oklahoma held that the holder of the equitable title to land was the owner for purposes of taxation. We quote the following excerpts from the opinion in that case:

". . . we will confine ourselves to the inquiry whether the holder of the equitable title to land is regarded in law as the 'owner thereof' . . . and, if so, whether an assessment of general tax against the property in his name as such owner is valid. We think it is, and that, too, independent of any statute or the express stipulation contained in the executory contract of sale."

". . . but it is insisted by plaintiff in error that he is likened unto one who has not earned a patent to land from the United States, and that, the title to the property in controversy being in the United States or in the city of Oklahoma City, and not taxable in the hands of his vendor, the same is not taxable in his hands until the legal title passes to him. Not so. We are of the opinion that it is immaterial whether the property in question was or was not before said sale to him taxable in the hands of plaintiff's vendor for the reason that whether thus taxable or not, it would become taxable as the property of plaintiff on the vesting in him of the equitable title thereto. Plaintiff, then, is rather likened to one who holds a final certificate for lands purchased from the United States of which said lands it has been held that the purchaser holds the equitable title, and while, of course, not taxable in

the hands of the United States, are taxable in his hands."

Under our view the county assessor should have listed and assessed the land and improvements as real estate, but was without authority to list and assess the amounts which had been paid. The equitable interest represented by these payments was included in the vendee's equitable ownership of the real estate. The improvements which should have been treated as real estate were erroneously listed and assessed as personal property; but were properly listed and assessed as omitted property. The appellee was not entitled to a refund of the amount of taxes paid on the improvements since the stipulated facts show that the amount paid on the value of the improvements was much less than what should have been paid on the real estate.

The trial below involved only the taxation of the improvements and of the amount paid. Both parties agreed that the payments were taxable and the trial court so decided. But the trial court also decided that the assessment of the improvements was void, which was contrary to law. Neither party questions the action of the trial court in holding the assessment on the amount of payments valid. Obviously the appellee should not be compelled to pay this assessment since under this opinion he is liable ultimately for taxation on the full valuation of the real estate. We therefore reverse the judgment and remand the cause with instructions to sustain appellant's motion for a new trial; and with the suggestion that the trial court take such action as is necessary to reach a result in harmony with this opinion.

Myers, J., concers in reversal with opinion.

### CONCURRING OPINION.

MYERS, J.—I concur in the reversal of the judgment of the trial court. I disagree with the majority opinion

as to the method of listing the property here involved for taxation.

On January 4, 1923, the Willard Library Association entered into a contract with appellee wherein it is recited, "That said party of the first part has this day sold and does hereby agree to convey to said party of the second part, and said party of the second part has this day purchased from said party of the first part, upon terms and conditions herein set forth, the following described real estate in the County of Vanderburgh, State of Indiana, to wit:" (Describing the lot). Conditions stated in the form of stipulations: The purchaser to pay $20,000; $2,000 in cash upon the execution of the contract and the balance he agrees to pay in installments of $1,000 each, payable on each following first day of January, with interest at 5% on unpaid installments, without relief from valuation or appraisement laws; to pay all taxes, assessments, etc. against the real estate; to keep the same in good repair and insured against fire and tornado, with a loss clause payable to the parties as their interest may appear; the purchaser to have possession of the real estate, but on default of any of the foregoing stipulations by him to be performed, the seller reserves the right to exercise either one of two remedies: (1) To declare the balance of the principal sum then remaining unpaid, together with interest thereon, due and payable, and to foreclose the equity of the purchaser in any court of competent jurisdiction, or, (2) to terminate the purchaser's right to possession, but in case the purchaser complies with all and each of the stipulations by him to be performed, then the seller shall, by a good and sufficient general warranty deed, convey to the purchaser the fee simple title to the real estate clear of all liens and encumbrances. The record here discloses a stipulation between the parties to this case that the real estate was

exempt from taxation in the hands of the Willard Library at the time it contracted to sell it to appellee.

The majority opinion, as I read it, proceeds upon the theory of an executed contract. Bouvier defines executed contracts as "those in which nothing remains to be done by either party, and where the transaction has been completed, or was completed at the time the contract or agreement was made: as, where an article is sold and delivered and payment therefor is made on the spot." "Executory contracts are those in which some act remains to be done." Bouvier's Law Dict. (Rawles, 3rd Rev.) p. 660. Executed contract—"A contract whose object has been performed." Executory contract —"One in which a party binds himself to do or not to do a particular thing." Anderson's Law Dict., p. 248. If the foregoing definitions are correct, then, in my opinion, the contract here under consideration should be regarded as executory, for, by its terms, the fee in the real estate is to remain in the seller and only to pass at a future time on certain conditions inconsistent with its immediate transfer.

The majority opinion for support relies on the case of *Martin* v. *Wise* (1915), 183 Ind. 530, 109 N. E. 745. The facts in that case and the question for decision, and the facts in the case at bar and question for decision clearly distinguish the cases, for, in the Martin case (1) the seller executed a deed concurrently with the execution of the contract and delivered it to a third person in escrow for second delivery on purchasers' compliance with certain specific conditions, the performance of which gave the deed vitality; (2) the seller parted with his title to the land; (3) the seller held the promissory notes of the purchaser for the unpaid part of the purchase price; (4) the suit was to enjoin the county treasurer from enforcing the collection of the tax assessed against the notes; (5) the subject of the con-

tract was not exempt from taxation at the time the contract was made; (6) the payment of taxes on the real estate was not questioned. In the instant case, (1) the seller agreed to transfer the fee or legal title to the real estate only when the purchaser shall have completely performed his part of the contract; (2) the seller retained the fee; (3) the unpaid purchase money was not evidenced by promissory notes; (4) this action was to recover alleged illegal taxes paid under protest; (5) at the time the contract was executed the subject thereof was exempt from taxation; (6) the payment of taxes on real property is the question here for decision.

In the listing and assessing of real property, §148 of our 1919 Tax Law (§14187, Burns 1926, §64-1015, Burns 1933, §15681, Baldwin's 1934) requires the assessor to list and assess the land or lot and the improvements thereon separately, and, nothing to the contrary appearing, we must presume that the officers followed the law in that respect. Since the lot and improvements thereon covered by the contract were assessed separately and all exempt from taxation in the hands of the holder of the fee, it seems to me the rule to be applied under such circumstances was fixed by the general assembly when it adopted §21 (§14061, Burns 1926, §64-503, Burns 1933, §15538, Baldwin's 1934) quoted in the majority opinion. This statute fixes the standard by which a certain class of property shall be assessed and taxed. It violates no constitutional provision, either Federal or State, and unless it does, it is not for the courts to say that the mandate of the law-making body shall not prevail as written.

The mandate should be: Judgment of the trial court reversed with instructions to grant appellant's motion for a new trial.