Everett **HAWKINS** and Linda Jane Hawkins, Appellants (Plaintiffs Below),

v.

**MARION COUNTY BOARD OF REVIEW** and Jerome E. Forestal, in his capacity as Auditor of Marion County, Appellees (Defendants Below).

No. 2–878A286.

Court of Appeals of Indiana, Fourth District.

Sept. 25, 1979.

Rehearing Denied Oct. 24, 1979.

---

Jane McNichol and Richard L. Zweig, Indianapolis, for appellants.

Robert W. McClelland, Sheila S. Suess, Indianapolis, for appellees.

MILLER, Presiding Judge.

Plaintiffs-Appellants, Everett Hawkins and Linda Jane Hawkins, husband and wife, appeal from the grant of a summary judgment in favor of Defendants-Appellees, Marion County Board of Review (Board) and Jerome E. Forestal, Auditor of Marion County. The Hawkins, who were purchasing property on a conditional sales contract, asked the trial court to issue a preliminary injunction, later to be made permanent, requiring the Board to process their affidavits in connection with a determination that they were entitled to the mortgage deduction (commonly known as a mortgage exemption) provided by *Ind. Code* 6–1.1–12–1 and 2 and to enter a declaratory judgment

that such mortgage deduction applies not only to legal owners who owe a debt secured by a mortgage but also to equitable owners of real property purchasing on a conditional sales contract.

We affirm.

On September 6, 1967, the Hawkins entered into a contract to buy property at 901–903 North Jefferson Avenue, Indianapolis, Indiana. Under the contract, they made a cash down payment of $1,500.00 and agreed to pay $80.00 a month until the contract price of $6,750.00 was paid. They assumed the payment of real estate taxes, assessments and insurance. In March, 1977, the Hawkins attempted to file an affidavit of mortgage indebtedness with Forestal, the County Auditor, in order to qualify them for the mortgage tax deduction authorized by *Ind. Code* 6–1.1–12–1. At that time the Hawkins owed the contract vendor approximately $1,425.00. The vendor had not claimed a mortgage deduction for the years pertinent to this action.

Forestal refused to accept the affidavit because the Hawkins were not the legal owners of the property. The Hawkins then appealed to the Board which also rejected their contention.

The Hawkins then filed this action. They asked that it be certified as a class action on behalf of themselves and all other contract buyers similarly situated. Before the trial court ruled on this question, the case was decided in the Board's favor.[1]

The Hawkins raise these issues on appeal:

(1) Are Indiana residents who purchase real property pursuant to a conditional sales contract eligible for the mortgage tax deduction set forth in *Ind. Code* 6–1.1–12–1?[2]

(2) Was the distinction made by the Board in this case between contract purchasers and owners of legal title a denial of the Hawkins' rights secured by the equal protection clause of the Fourteenth Amendment of the United States Constitution?

(3) Did the trial court err in denying the Hawkins' motion for summary judgment?

The Hawkins contend that, in order to establish whether a conditional vendee is entitled to a mortgage exemption, it is necessary first to determine whether such vendee is one who "owns real property" within the meaning of *Ind. Code* 6–1.1–12–1(a)(2). "While 'ownership' within the meaning of the tax law ordinarily means a fee simple in the last analysis the question of its meaning is one of legislative intent." 84 *C.J.S. Taxation* § 287 (1955). Unfortunately, an examination of the Legislative history did not reveal a discussion of the purpose of the original 1899 Act, the predecessor of *Ind. Code* 6–1.1–12–1. Therefore this Court, in construing the statute, is

> bound by several familiar rules of statutory construction. The bedrock rule of statutory construction is that a statute clear and unambiguous on its face need not and cannot be interpreted by the court. * * * *Economy Oil Corporation v. Indiana Department of State Revenue* (1974), 162 Ind.App. 658, 663, 321 N.E.2d 215, 218 (citations omitted).

We find the language of the statute in question is clear and unambiguous and not susceptible to the interpretation urged by the Hawkins. *Ind. Code* 6–1.1–1–1 provides that the

> definitions and rules of construction contained in this chapter [IC 6–1.1–1–1 to 23b] apply throughout this article [IC 6–1.1–1–1 to IC 6–1.1–37–13] unless the context clearly requires otherwise.

---

1. The essential facts brought forth in the summary proceedings and as are related herein are not in dispute.

2. (a) Each year a person who: (1) is a resident of this state; (2) owns real property located within Indiana; and (3) owes a debt which is secured by a mortgage on the real property; may obtain the mortgage deduction provided by this section.
(b) A person's mortgage deduction for a year shall not exceed the lesser of: (1) the balance of his mortgage indebtedness on the assessment date of that year; (2) one thousand dollars; or (3) one half [½] of the assessed value of his real property for that year.

Further, the term, "owner"[3] is defined in *Ind. Code* 6–1.1–1–9 as follows:

(a) For purposes of this article, the "owner' of tangible property shall be determined by using the rules contained in this section.

(b) *Except as otherwise provided in this section, the holder of the legal title to personal property, or the legal title in fee to real property, is the owner of that property.*

(c) When title to tangible property passes on the assessment date of any year, only the person obtaining title is the owner of that property on the assessment date.

(d) When the mortgagee of real property is in possession of the mortgaged premises, the mortgagee is the owner of that property.

(e) When personal property is security for a debt and the debtor is in possession of the property, the debtor is the owner of that property.

(f) When a life tenant of real property is in possession of the real property, the life tenant is the owner of that property. (Our emphasis)

We note the foregoing section contains only two exceptions, with respect to real property, to the definition of owner as one who holds "legal title in fee", that is, subsection (f), a life tenant in possession and, subsection (d), a mortgagee in possession. The latter subsection merely reiterates and reemphasizes that in Indiana a mortgagee has no title to the land but rather acquires a lien on the property as security for the debt. *See, Indiana Dept. of State Revenue v. Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N.E.2d 415; *Baldwin v. Moroney* (1971), 173 Ind. 574, 91 N.E. 3; *Gilbert v. Lusk* (1952), 123 Ind.App. 167, 106 N.E.2d 404. Our statutes provide that real property is assessed to the person liable for taxes, *Ind. Code* 6–1.1–4–1, such person being the owner on the assessment date of the year,

*Ind. Code* 6–1.1–2–4(a). Thus, the person occupying the land is not liable for taxes when the property is assessed and taxed in the name of the owner. *Ind. Code* 6–1.1–2–4(b).

We are aware of a number of instances where the Legislature has defined "owner" as encompassing those with interests other than that of a legal title holder. *See, Ind. Code* 9–8–11–2(h) (periodic vehicle inspection); *Ind. Code* 14–1–2–2(2) (registration of watercraft); *Ind. Code* 18–4–24–2(10) (Meridian Street Preservation Commission); *Ind. Code* 19–5–4–1(27) (Metropolitan Thoroughfare Authority Act) and, *Ind. Code* 32–9–1–3(i) (Uniform Disposition of Unclaimed Property Act). However, we further note that in each instance the Legislature clearly set out the nature of those interests as in the case of the statute under examination here.

Most recently the Legislature has provided for a tax credit (Homestead Credit) in addition to the mortgage deduction, *Ind. Code* 6–1.1–20.9–1 to 6 (Act 1979 P.L. 60, p. 256). In the Act the Legislature granted the Homestead Credit to persons other than the legal title holder by defining a "Homestead" as an individual's principal place of residence which

[t]he individual either owns or is buying under a contract, recorded in the county recorder's office, that provides that he is to pay the property taxes on the residence; * * * *Ind. Code* 6–1.1–20.9–1(2)(B).

This latest expression of the Legislature fortifies our conclusion that the statute in question is unambiguous and if the Legislature had intended to grant contract buyers the mortgage exemption it would have expressly done so.

The Hawkins further assert that, even assuming the statute is unambiguous, the granting of mortgage deductions only to holders of legal title would lead to ab-

---

3. The Hawkins note that *Ind. Code* 6–1.1–12–1 uses the term "owns" and does not use the term "owner". Own means to "have good legal title" and owner is the "person in whom is vested . . . [the] title of property."

*Black's Law Dictionary* 1259 (4th ed. rev. 1973). It is apparent that the definition section applies. *See, State v. Lowery* (1906), 166 Ind. 372, 77 N.E. 728.

surd results since the purpose of the deduction is to encourage Indiana residents to purchase homes. However, they cite no authority for this proposition. As noted earlier we do not have the benefit of the Legislature's reason for enacting the mortgage deduction statute. However, the history of the Homestead Credit Act reveals that the credit was not granted in order to encourage home ownership but rather "to prevent a shift of property tax burden to residential property owners as a result of reassessment", Indiana House Journal (Daily Ed. January 10, 1979). Thus, we cannot accept the Hawkins' unsupported theory of the purpose for the enactment of *Ind. Code* 6–1.1–12–1, *supra.*

In view of the above we find no ambiguity in *Ind. Code* 6–1.1–12–1, *supra*, and further find that the Legislature did not by its express language intend to grant a mortgage deduction to a contract buyer.

■ The Hawkins vigorously argue they should be considered owners within the meaning of the statute because our courts in the past have granted equitable owners similar rights to those afforded legal owners whose land is encumbered with a real estate mortgage. *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, *cert. den.*, (1974) 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476; *Reynolds v. Milford* (1978), Ind.App., 375 N.E.2d 265; *Finley v. Chain* (1978), Ind.App., 374 N.E.2d 67. This argument is more appropriately addressed to the Legislature based on our conclusion that the Legislature clearly did not intend to include "equitable owners" within the meaning of "owner" under the statute.

Having determined that *Ind. Code* 6–1.1–12–1 applies only to holders of legal title, it is unnecessary for this Court to determine whether the Hawkins, being equitable owners, owe a debt "which is secured by a mortgage on the real property." However, we note the Hawkins cite *Skendzel v. Marshall, supra*, for the proposition that the contract vendee owes a debt secured by a mortgage. This decision is being misinterpreted by the Hawkins. Nowhere in the *Skendzel* decision does our Supreme Court state that the interest of the vendor is a mortgage. The Court only specifically held "*a conditional land sales contract to be in the nature of a secured transaction, the provisions of which are subject to all proper and just remedies at law and in equity.*" *Id.* 261 Ind. at 241, 301 N.E.2d at 650. The thrust of the *Skendzel* case was to apply equitable principles to permit a vendee to recover his equitable interest in the property upon foreclosure instead of forcing the vendee to forfeit all that he had paid to the vendor. Further, although a mortgage must always be foreclosed before sale in compliance with *Ind. Code* 32–8–16–1, *Skendzel* held that a land sales contract does not have to be foreclosed "[i]n the case of an abandoning, absconding vendee." *Id.* 261 Ind. at 240; 301 N.E.2d at 650. In addition, "[f]orfeiture would also be appropriate where the vendee has paid a minimal amount on the contract at the time of default" and the vendor's equity is endangered by the vendee's actions. *Id. See also, Morris v. Weigle* (1978), Ind., 383 N.E.2d 341; *Reynolds v. Milford, supra; Finley v. Chain, supra.*[4]

■ We conclude therefore that the Hawkins, as a result of their conditional

---

**4.** Neither do two other cases cited by Hawkins support the proposition that the vendee has a mortgage on his property. In *Martin v. Wise* (1915), 183 Ind. 530, 109 N.E. 745, the Court held the debt owed the vendor on a conditional land sales contract "resembles" credits secured by a mortgage and, as a debt owing to the vendor under the contract, was subject to the assessment of taxes in the same manner that credits secured by purchase money mortgages were so assessed. In *Stark v. Kreyling* (1934), 207 Ind. 128, 188 N.E. 680, our Supreme Court held, under the then applicable tax statutes, that the terms of a conditional sales contract between the vendor, a tax exempt entity, and the vendee who used the property for a non-exempt purpose constituted a present sale and purchase which resulted in the vendor exchanging his property for the unconditional obligation of the vendee. Further, the vendee's performance was secured by retention of the legal title by the vendor. This case does not stand for the proposition that the security retained by the vendor was a mortgage on the property.

sales agreement did not owe a debt "secured by a mortgage on the real property."

■ The Hawkins next contend that the statute in question as construed by both the Board and the trial court denies rights secured to them by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Specifically, they say their position is so similar to that of a legal title holder that placing them in separate classification for the purpose of the mortgage deduction is irrational, arbitrary, and invidiously discriminatory.

The Hawkins and the Board agree that the states have wide discretion in the imposition of taxes. In *Bell's Gap Railroad Co. v. Commonwealth of Pennsylvania* (1890), 134 U.S. 232, 237, 10 S.Ct. 533, 535, 33 L.Ed.2d 892, the United States Supreme Court stated:

> The provision in the fourteenth amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject that would include all cases. They must be decided as they arise. We think that we are safe in saying that the fourteenth amendment was not intended to compel the state to adopt an iron rule of equal taxation.

Further, the parties recognize that our Indiana Supreme Court in a 1902 decision upheld the constitutionality of the mortgage deduction statute. The Court, quoting extensively from *Bell's Gap Railroad Co., supra,* held the provisions of the Act[5] did

---

5. The first three sections of the Act were as follows:

Section 1. Be it enacted by the general assembly of the state of Indiana, that any person being the owner of real estate liable for taxation within the state of Indiana, and being indebted in any sum, secured by mortgage upon real estate, may have the amount of such mortgage indebtedness, not exceeding [$700], existing and unpaid upon the first day of April in any year, deducted from the assessed valuation of mortgage premises for that year, and the amount of such valuation remaining after such deduction shall have been made shall form the basis for assessment and taxation for said real estate for said year: provided, that no deduction shall be allowed greater than one-half of such assessed valuation of said real estate. Section 2. Any person desiring to avail himself, or herself, of the provisions of this act, shall, between the first day of March and the first day of May of each year, file with the auditor of the county wherein said real estate is situated a sworn statement of the amount of such mortgage indebtedness existing and unpaid on the first day of March of that year, giving the name and residence of the mortgagee, and shall also give the name and residence of the assignee or *bona fide* owner or holder of said mortgage, if known, and if not known, said person shall state that fact, and shall also state the record and page where said mortgage is recorded, and a brief description of the real estate upon which such incumbrance exists. Section 3. The county auditor with whom such statement is filed, in case the money, notes or credits evidenced by such mortgage indebtedness be liable for taxation in any county in the state of Indiana, other than the one wherein such real estate is situate, shall immediately certify and transmit a copy of such sworn statement to the auditor of the county wherein the mortgagee, assignee, or *bona fide* holder or owner of said mortgage resides, or wherein the money, notes or credits evidenced by such mortgage is otherwise taxable. Quoted in *State ex rel. Lewis v. Smith, supra,* at 544–45, 63 N.E. at 25–26.

not violate Section 1 of Article 10 and Section 22 of Article 4 of the Indiana Constitution. *State ex rel. Lewis v. Smith* (1902), 158 Ind. 543, 63 N.E. 25.

The Hawkins argue that classifying them separately bears no rational relation to the purpose of the Act. They speculate the purpose of the Act is to encourage home ownership but submit no authority for this speculation. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). Further they say both classes are identical, therefore, there can be no rational basis for discriminating against them by denying them the deduction. *Skendzel v. Marshall, supra*, and its progeny, as discussed earlier, do not hold the classes are identical for all purposes. Rather they hold the courts can apply equitable principles to require foreclosure of a conditional land sales contract and to prevent forfeiture when such forfeiture would be unconscionable under the circumstances.

The United States Supreme Court, in holding a Kentucky statute taxing deposits in Kentucky banks at a rate of ten cents per One Hundred Dollars as compared with the rate of fifty cents per One Hundred Dollars on deposits outside the State did not deny equal protection, noted that in "taxation, even more than other fields, legislatures possess the greatest freedom in classification. . . . [T]he presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." *Madden v. Kentucky* (1940), 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590.

Additionally, where a classification for tax purposes "is such that the individual taxpayer has some control over his inclusion or exclusion therefrom, it cannot be considered unconstitutionally discriminatory." 71 *Am.Jr.2d State and Local Taxation* § 179 (1973). *See e. g., Merchants' and Manufacturers' Nat. Bank v. Pennsylvania* (1897), 167 U.S. 461, 17 S.Ct. 829, 42 L.Ed. 236. In *State ex rel. Lewis v. Smith, supra*, 458 Ind. at 550, 63 N.E. at 27–28, the Court stated:

> As to the requirement of uniformity, we have to say that the act in question purports to be a law that is uniform throughout the state, and, as it permits all persons to take advantage of it when these circumstances bring them within its operation, we are of the opinion that it does not violate the requirement of the constitution.

We conclude the rights and obligations acquired by the Hawkins under the contract are sufficiently distinct from those acquired by a legal title holder of mortgaged property. The Legislature did not violate either the Indiana or United States Constitutions.

By reason of the foregoing, the trial court was correct in granting the Board's summary judgment and denying that of the Hawkins.

Judgment affirmed.

CHIPMAN and YOUNG, JJ., concur.