768 F.2d 923
 In the Matter of George William JONES and Grace Eilene
Jones, Debtors.
Appeal of Ward W. MILLER, Trustee.
 No. 84-2964.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 28, 1985.
Decided July 26, 1985.
 
 Ward W. Miller, Bloom & Bloom, Fort Wayne, Ind., for trustee.
 Mark A. Thoma, Peters & Terrill, Fort Wayne, Ind., for debtors.
 Before CUDAHY and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 CUDAHY, Circuit Judge.
 
 
 1
 Ward W. Miller, the trustee in bankruptcy, appeals an order of the district court affirming an order of the bankruptcy court which held that the debtors' interest in a contract for the sale of real estate was itself real property under the law of Indiana, and so exempt from the estate. The sole issue on appeal is whether the interest had by a seller in an installment contract for sale of real estate is itself classified as real property under Indiana law and so exempt from the bankruptcy estate under the Indiana exemption statute, IND. CODE Sec. 34-2-28-1(b) (1982). We conclude that such an interest is intangible personalty, and so reverse the order of the district court.
 
 I.
 
 2
 The debtors, Mr. and Mrs. Jones, were the owners in fee simple of a parcel of real estate located in Allen County, Indiana. On March 25, 1982, the Joneses sold that real estate pursuant to a contract for the conditional sale of real estate. A substantial down payment was made on the date of contract, but the Joneses still had significant equity in the real estate on July 21, 1982. On that date the Joneses filed a voluntary petition under chapter VII of the Bankruptcy Code.[1]
 
 
 3
 After the Joneses filed for bankruptcy their interest in the subject real estate became part of their bankruptcy estate. The trustee completed the performance of the contract for sale of the real estate on March 30, 1983. After satisfaction of mortgage liens and closing expenses the trustee received the net sum of $1,600.40, which represented the Joneses' remaining equity in the real estate.
 
 
 4
 On July 21, 1983, the Joneses filed an amended Schedule B-4, claiming as exempt, inter alia, $6,800.00 equity in the real estate already sold, contending it was either tangible personal property or real estate. The trustee objected, contending that the Joneses' interest in the contract was, as a matter of Indiana law, no longer real estate on the bankruptcy filing date. The Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division, issued an order on April 9, 1984, in which it noted that the property was not the residence of the Joneses but nonetheless held that the Joneses had an ownership interest in the real estate that enabled them to retain all proceeds as exempt under section 34-2-28-1(b) of the Indiana Code. In re Jones, No. 82-10717 (Bankr.N.D.Ind. April 9, 1984).
 
 
 5
 The trustee filed a timely motion to alter judgment and, after that was denied by written order, In re Jones, No. 82-10717 (Bankr.N.D.Ind. Aug. 3, 1984), perfected a timely appeal to the district court. Oral argument was held on the appeal on November 1, 1984, at the conclusion of which the district judge affirmed the bankruptcy court in an oral opinion and order. The trustee filed a notice of appeal to this court on November 14, 1984; his appeal was docketed two days later. On December 11, 1984, the district court issued a written opinion explicating its order of November 1st.[2] Our jurisdiction is founded on 28 U.S.C. Sec. 158(d) (1984).[3]II.
 
 
 6
 Section 541 of the Bankruptcy Code provides for the creation of a bankruptcy estate, and defines the property of the estate. 11 U.S.C. Sec. 541. In relevant part, section 541 provides:
 
 
 7
 Sec. 541. Property of the estate.
 
 
 8
 (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:
 
 
 9
 (1) .... all legal or equitable interests of the debtor in property as of the commencement of the case.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
 
 
 13
 Upon the filing of a petition all of the debtor's property becomes property of the estate. The scope of the property defined by section 541 to be property of the estate is broad; in general, all interests of a debtor, both legal and equitable, are property of the estate. United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & nn. 8, 9, 103 S.Ct. 2309, 2313 & nn. 8, 9, 76 L.Ed.2d 515 (1983). The underlying theory of the section "is to bring into the estate all interests of the debtor in property as of the date the case is commenced. Thus, as a general rule, the estate created under section 541 will include all legal or equitable interests of the debtor in property, both tangible and intangible, including exempt property,...." 4 L.P. KING, ed., COLLIER ON BANKRUPTCY p 541.06 at 541-28 (15th ed. 1985)("COLLIER"). See Matter of Smith, 640 F.2d 888, 890 (7th Cir.1981). Thus "any rights the debtor may have as a lienor or mortgagee will become property of the estate." 4 COLLIER p 541.07 at 541-32. This includes any right of action arising from a contract. 4 COLLIER p 541.10 at 541-65. However, the estate's rights are limited to those had by the debtor: "whatever rights a debtor had at the commencement of the case continue in bankruptcy--no more, no less." Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir.1984). Subsection 541(d) provides that property to which the debtor holds legal title but not full equitable title becomes property of the estate but only to the extent of the debtor's legal title and not including any equitable interest in the property not held by the debtor.
 
 
 14
 Whether the debtor has an interest in property and, if he does, the nature of that interest, is not defined in the Code, and requires resort to non-bankruptcy law. 4 COLLIER p 541.02 at 541-10--541-11. Generally this means resort to state law, both to determine whether property is an asset of the debtor, and so included in the estate, In re K & L Ltd., 741 F.2d 1023, 1030 n. 7 (7th Cir.1984), and to determine the nature of the property rights in the assets of the estate, Butner v. United States, 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-18, 59 L.Ed.2d 136 (1979). There is no dispute that whatever the Joneses owned at the time they filed their petition was an interest in property and became part of the property of the estate. Dist.Ct. Order at 5; Joneses' Br. at 8. They retained legal title to the real estate and an equitable interest equal to the unpaid purchase price less mortgage liens and expenses. However this interest may be characterized under Indiana law, it was an interest in property and properly includable in the estate.
 
 
 15
 Section 522 of the Code provides that certain property of the estate may be exempted by the debtor. 11 U.S.C. Sec. 522(b). In general, the debtor may elect between exemptions as defined under subsection 522(d) of the Code or as defined under state law and federal law other than subsection 522(d). 11 U.S.C. Sec. 522(b)(1) and (2). However, subsection 522(b)(1) also provides an opt-out provision pursuant to which a state may veto the 522(d) exemptions and limit debtors subject to its law to state exemptions. 11 U.S.C. Sec. 522(b)(1). A substantial majority of the states, thirty-six at last count, 3 COLLIER p 522.02 at 522-12 n. 4a, have exercised this option, and Indiana is among them.
 
 
 16
 Indiana Code Sec. 34-2-28-0.5 precludes use of the federal subsection 522(d) exemptions. The debtor may exempt from the estate only that property specified by Indiana law. IND. CODE Sec. 34-2-28-0.5 (1982). Section 34-2-28-1 of the Indiana Code, which lists certain exemptions, provides in relevant part as follows:
 
 
 17
 34-2-28-1. List of exemptions; limitations.
 
 
 18
 The following property of a debtor domiciled in the state of Indiana shall not be liable for levy or sale on execution or any other final process from a court, for any debt growing out of or founded upon a contract express or implied.
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 (b) Other [i.e., nonresidential] real estate or tangible personal property of the value of four thousand dollars ($4,000).
 
 
 22
 (c) Intangible personal property, including choses in action (but excluding debts owing and income owing), of the value of one hundred dollars ($100.00).
 
 
 23
 IND. CODE Sec. 34-2-28-1 (1982). It is important to note that the statute exempts "other real estate;" it does not exempt an interest in real estate unless, of course, that interest is classified as real estate. The question before us is whether that which the Joneses owned as of the date the estate was created, concededly an interest in real estate and also property of the estate, is "real estate" and so exempt under section 34-2-28-1(b). If not, it must be intangible personal property and subject to section 34-2-28-1(c).
 
 
 24
 Indiana has adopted a lien theory to describe the vendor's interest after consummation of a conditional (executory, installment) contract for the sale of land. Finley v. Chain, 176 Ind.App. 66, 80-81, 374 N.E.2d 67, 78 (1st Dist.1978) overruled on other grounds, Morris v. Weigle, 270 Ind. 121, 383 N.E.2d 341 (1978). Thus the interest of the vendor in the realty is analogous to that of a mortgagee. Id., 176 Ind.App. at 80, 374 N.E.2d at 78. This analogy has been explained by the Indiana Supreme Court:
 
 
 25
 Under a typical conditional land contract, the vendor retains legal title until the total contract price is paid by the vendee. Payments are generally made in periodic installments. Legal title does not vest in the vendee until the contract terms are satisfied, but equitable title vests in the vendee at the time the contract is consummated. When the parties enter into the contract, all incidents of ownership accrue to the vendee. Thompson v. Norton (1860), 14 Ind. 187. The vendee assumes the risk of loss and is the recipient of all appreciation in value. Thompson, supra. The vendee, as equitable owner, is responsible for taxes. Stark v. Kreyling (1934), 207 Ind. 128, 188 N.E. 680. The vendee has a sufficient interest in land so that upon sale of that interest, he holds a vendor's lien. Baldwin v. Siddons (1910), 46 Ind.App. 313, 90 N.E. 1055, 92 N.E. 349.
 
 
 26
 This Court has held, consistent with the above notions of equitable ownership, that a land contract, once consummated constitutes a present sale and purchase. The vendor " 'has in effect, exchanged his property for the nonconditional obligation of the vendee, the performance of which is secured by the retention of the legal title.' " Stark v. Kreyling, supra, 207 Ind. at 135, 188 N.E. at 682. The Court, in effect, views a conditional land contract as a sale with a security interest in the form of legal title reserved by the vendor. Conceptually, therefore, the retention of the title by the vendor is the same as reserving a lien or mortgage. Realistically, vendor-vendee should be viewed as mortgagee-mortgagor. To conceive of the relationship in different terms is to pay homage to form over substance. See Principles of Equity, Clark, 4th edition, Sec. 9, p. 23.
 
 
 27
 Skendzel v. Marshall, 261 Ind. 226, 234, 301 N.E.2d 641, 646 (1973), cert. denied, 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974).
 
 
 28
 Thus a conditional land sales contract is in the nature of a secured transaction. Id. at 241, 301 N.E.2d at 650; Stark v. Kreyling, 207 Ind. 128, 135, 188 N.E. 680, 682 (1934). The vendee owns the real estate, and has all the rights of ownership, subject only to not wasting the realty so as to impair the vendor's security interest. Knarr v. Conaway, 42 Ind. 260, 265 (1873); Finley v. Chain, 176 Ind.App. at 79, 374 N.E.2d at 77. The vendor has a security interest for the unpaid balance of the purchase price. Oles v. Plummer, 444 N.E.2d 879, 882 (Ind.App., 1st Dist.1983). The vendor, therefore, merely owns a lien. While a lien is property, it is not real estate even if it is a lien on real estate. Rather, a lien is intangible personalty.
 
 
 29
 Indiana subscribes to the doctrine of equitable conversion, under which the interest of the vendee under an executory contract for the sale of land is deemed realty and the interest of the vendor is personalty. Board of Commissioners v. Midwest Associates, Inc., 144 Ind.App. 264, 273-75, 245 N.E.2d 853, 858 (1st Div.1969), transfer denied, 253 Ind. 551, 255 N.E.2d 807 (1970); Bucher v. Young, 94 Ind.App. 586, 590, 158 N.E. 581, 582 (1927), transfer denied (1932); Colignon v. Artz, 205 Wis. 51, 55, 236 N.W. 585, 586 (1931); 6 WEST'S INDIANA LAW ENCYCLOPEDIA, Conversion Sec. 1 at 337-38 (1958). Thus the interest had by the vendor in real estate after execution of the contract becomes personal property. Colignon v. Artz, 205 Wis. at 55, 236 N.W. at 586. Similarly, if the vendor dies intestate the interest in the property secured by the retained title is personalty and will be distributed as such. IND. CODE Sec. 29-1-13-6 (1982); Henson v. Ott, 7 Ind. 512, 515 (1856).
 
 
 30
 Our conclusion that the debtors' interest in the conditional land sale contract is not realty finds support in the Indiana intangibles tax statute. IND. CODE Sec. 6-5.1-1-1 et seq. (1982). The definitions in this statute have been used to define the nature of property for purposes of the section 34-228-1 exemptions. Myles v. Flora, 462 N.E.2d 1319, 1320-21 (Ind.App., 1st Dist.1984). Section 6-5.1-1-1 of the intangibles tax statute defines "intangible" to include, inter alia:
 
 
 31
 (11) a written instrument or certificate evidencing a debt, including a mortgage, a chattel mortgage, a bill of sale, and a conditional sales contract;
 
 
 32
 * * *
 
 
 33
 * * *
 
 
 34
 (13) a written instrument evidencing an exchange of property when the ultimate transfer of title is intended; [and]
 
 
 35
 (14) a written contract for payment of money[.]
 
 
 36
 IND. CODE Sec. 6-5.1-1-1 (1982) (emphasis added). The conditional sales contract involved here, on its own or as a lien-interest in the property had by the debtors under the mortgage theory of Skendzel, is an intangible under the definitions of the intangibles tax. Since the intangibles tax definitions can be used to classify property for purposes of the statutory exemptions of section 34-2-28-1, Myles v. Flora, supra, the interest had by the debtors here is an intangible.
 
 
 37
 We also note that the Indiana Court of Appeals interpreted the Indiana mortgage deduction statute, a part of the property tax statute which allows a deduction from the assessed value of the real estate, to not allow the deduction for land contract purchasers. The court adopted the theory that vendees under a conditional sales agreement neither held legal title nor (contrary to Skendzel) owed a debt secured by a mortgage on the real property. Hawkins v. Marion County Board of Review, 182 Ind.App. 205, 394 N.E.2d 957 (4th Dist.1979). In response, the legislature promptly amended the statute to clearly allow land contract purchasers to claim the exemption. IND. CODE Sec. 6-1.1-12-1(a)(2) (1982). Rushville Production Credit Association v. Mohr, 42 B.R. 1000, 1003 (S.D.Ind.1984).
 
 
 38
 The interest had by the debtors is classified as a lien or mortgage under Skendzel. Under the doctrine of equitable conversion it is treated as personalty at the time the contract is signed. It would descend as personalty if the debtors were to die intestate. Finally, it is an intangible under the intangibles tax definitions. Therefore we believe it is properly classifiable under Indiana law as intangible personalty. We conclude that it is not real estate exempt from the bankruptcy estate under section 34-2-28-1(b).[4]
 
 
 39
 The arguments made by the debtors, the bankruptcy court and the district court reduce essentially to three. The most plausible of these arguments is that given by the bankruptcy court. That court noted that the debtors had legal title in the property and therefore had an interest in the property claimed as exempt. The court also correctly noted that when real estate is sold by court order the proceeds retain their original character as realty. The court then concluded that the debtors' interest was realty and so exempt under section 34-2-28-1(b). This conclusion would be unexceptionable if, as the bankruptcy court apparently assumed, the interest was realty at the time the petition was filed. But, as we have explained above, it is not.
 
 
 40
 The bankruptcy court did correctly note that Skendzel does not state that a contract vendor retains only a security interest but states instead that the vendor retains legal title. It also correctly noted that Skendzel is not an interpretation of the exemption statute. But it does not follow that the bankruptcy court's order was consistent with that decision.
 
 
 41
 The other arguments have less merit. Both the district court and the debtors argue that because the debtors had sufficient interest in the property under state law to sweep it into the estate under section 541, therefore they had sufficient interest for an exemption under section 34-2-28-1(b). But section 541 is expressly designed to sweep everything into the estate. It is only if the property brought into the estate is of the type that is exempted under the exemption statutes that it is thrown back out of the estate. And, although it is true that an interest in real property is itself property (for it is something that can be owned), it does not follow from that that an interest in real property is necessarily classified as real property.
 
 
 42
 Nor does the fact that state exemption law is a substitute for the federal section 522(d) exemptions entail that there should be no difference of result under the two schemes, as the district court apparently believed. The election and veto provisions were legislative compromises adopting the principle that there could be different results under the two (state and federal) schemes. Also, the fact that the debtors had a legal interest in property does not make Skendzel "not instructive," for that decision is premised on the retention of legal title by the vendors.
 
 
 43
 In addition to these arguments, the debtors rely on the fact that under the contract they retained the right to mortgage their interest (up to the value of their equity in the property). But this is not determinative. The contract was a standard form conditional land sale contract. Under it the vendees acquired the right to possession and the obligation to pay taxes and assessments, and to insure the property. Apparently the vendees also bore the risk of loss or gain. Thus the contract is the typical sort of contract discussed in Skendzel. The fact that the vendors can grant a third party a security interest (for that is what a mortgage is) in their remaining interest does not of itself make that remaining interest real estate.
 
 
 44
 We agree with the debtors and the courts below that exemptions which take property out of the bankruptcy estate should be liberally construed. However, we do not believe that this rule should cause us to ignore the clear property classifications of Indiana law. We also believe that the long-run benefits of adherence to clear rules will outweigh the specific hardship on individual debtors caused by the strictness of the rules or our faithful interpretation of them.
 
 
 45
 For these reasons we conclude that the interest in real estate had by a vendor after the signing of an executory or conditional contract for the sale of land is itself intangible personalty under Indiana law. Therefore the debtors are not entitled to exempt it under Indiana Code section 34-2-28-1(b). The order of the district court is REVERSED.
 
 
 46
 POSNER, Circuit Judge, concurring.
 
 
 47
 I join Judge Cudahy's characteristically thorough and cogent opinion for the court, and write separately merely to comment on the district judge's practice, referred to in a footnote of Judge Cudahy's opinion, of deciding bankruptcy cases by oral opinion but then writing an opinion if the losing party appeals. I do not know how widespread the practice is; I hope not very.
 
 
 48
 Granted, the practice has appeal as a time-saver--no mean consideration in an era of heavy judicial caseloads. Why bother to write an opinion if the case is not going to be appealed? The parties are entitled to a statement of the reasons for the judge's result, and they get it, but it is oral. Only if the case is appealed does the judge take the time necessary to prepare a written opinion.
 
 
 49
 But the practice raises a number of serious questions, of which the most fundamental is whether it is authorized by law. The filing of the notice of appeal from a final judgment ordinarily divests the district court of jurisdiction over the case and shifts it to the court of appeals; anything the district judge does with the case thereafter, unless and until the case is remanded to him by the court of appeals, is a nullity. See, e.g., Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam); Armstrong v. Board of School Directors, 616 F.2d 305, 327 (7th Cir.1980); Miranda v. Southern Pac. Transportation Co., 710 F.2d 516, 519 (9th Cir.1983); 9 Moore's Federal Practice p 203.11 (2d ed. 1985); 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure Sec. 3949, at pp. 358-59 (1977). This is a judge-made rule, and naturally there are exceptions to it. The purpose of the rule is to keep the district court and the court of appeals out of each other's hair, and when simultaneous proceedings would be productive and expediting rather than duplicative and delaying--as where the court of appeals asks the district court to clarify a jurisdictional uncertainty--the rule is not applied. See, e.g., Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc., 768 F.2d 189, 190-91 (7th Cir.1985); Overnite Transportation Co. v. Chicago Industrial Tire Co., 697 F.2d 789, 792 (7th Cir.1983); Sutter v. Groen, 687 F.2d 197, 199 (7th Cir.1982); Gulliver v. Dalsheim, 739 F.2d 104, 106 (2d Cir.1984); Marine Petroleum Co. v. Champlin Petroleum Co., 657 F.2d 1231, 1245-48 (Temp.Emerg.Ct.App.1980); 16 Wright, Miller, Cooper & Gressman, supra, Sec. 3937, at p. 275, Sec. 3949, at p. 359.
 
 
 50
 Should the rule have an exception to allow a district judge to issue an opinion after the notice of appeal is filed? There is some support for an affirmative answer, see Silverthorne v. Laird, 460 F.2d 1175, 1178-79 (5th Cir.1972); 9 Moore's Federal Practice, supra, p 203.11, at p. 3-46 n. 2; but see Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n Local 1291, 365 F.2d 295, 300 (3d Cir.1966), rev'd on other grounds, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967) (dictum), and yet I believe that, helpful as the practice would be to us in some cases, and economizing as it would be of district judges' time, it would on balance impede rather than facilitate the appellate process. The losing party cannot make an informed judgment whether to appeal until he has the complete statement of the district judge's reasons. The practice therefore encourages the filing of protective notices of appeal designed to get the judge to state his reasons fully. It is not a good idea to encourage losing parties to appeal federal district court judgments automatically and wait till later to decide whether to prosecute the appeal. We have enough paperwork as it is.
 
 
 51
 More important, the processing of appeals will be delayed if the parties to a case, before they can brief the appeal, must wait for the district judge to issue an opinion after the appeal is filed. In this case, it is true, the delay was slight. The judge issued his written opinion 40 days after his oral one. That was only 10 days after the notice of appeal had to be filed. But as there is no deadline for the filing of a post-judgment written opinion, the parties to the appeal may have to ask this court for repeated extensions of time for filing the record and their briefs, while they await the district judge's written opinion. The appellant has only 10 days after filing the notice of appeal to order the transcript from the court reporter, Fed.R.App.P. 10(b)(1), and only 40 days after the docketing of the appeal in this court--which may come as soon as 14 days after the filing of the notice of appeal, see 7th Cir. Rule 4(a)(1)--in which to file his opening brief. See 7th Cir.Rule 4(b). Often it will take the judge longer than any of these periods to prepare his written opinion. Extensions of time for filing briefs are disfavored. See 7th Cir.Rule 8(a). If an extension is denied and later the district judge issues an opinion, the parties will incur expenses that may turn out to be completely wasted.
 
 
 52
 It might be argued that if the district judge waits to issue the judgment until he has prepared a written opinion, the total interval between the end of trial and the briefing of the appeal will be as great as it would be if he delayed issuing a written opinion till the notice of appeal was filed--indeed will be greater, if the judge is slowed down by the burden of writing opinions in cases that are not appealed. But it is one thing to make the parties wait for the judgment; it is another thing to render judgment in a form (i.e., with an incomplete statement of grounds) that makes the losing party uncertain how soon he can begin preparing his appeal in earnest, because he does not know all the judge's reasons for the judgment or when they will be revealed.
 
 
 53
 Besides throwing off the appellate timetable, the practice of writing opinions only in cases that the judge knows have been appealed converts the opinion-writing process from exploration to rationalization. The judge is defending a decision that he has already reached and announced and that is being challenged in a higher court, rather than formulating a decision. It is true that this court sometimes announces its decision before handing down its opinion. But we reserve the practice for cases that either are emergencies or are frivolous.
 
 
 54
 The practice of writing an opinion only if and when an appeal is filed may cause resentment among litigants and their lawyers. They may believe, not unreasonably, that if a written opinion is necessary to explain fully the judge's grounds of decision, they are entitled to such an opinion even if they do not plan to appeal. Maybe it is sentimental to question the rationing of our district judges' scarce time on the basis of which cases are most important to the development of the law, and no doubt those judges in deciding whether and how much to write consider anyway the probability that the case will be appealed. But I am disturbed by a practice that amounts to telling litigants, "The reasons I give you for my decision are not good enough for the appellate court, so if but only if you appeal I will give you a fuller statement." It is an admission of the oral opinion's inadequacy.
 
 
 55
 Even if, as I suspect, the district judge was not authorized to do what he did here, I quite agree that it does not affect our authority to decide the appeal. He exceeded his jurisdiction, not we ours. If there were some ground or finding in his written opinion, omitted from the oral opinion, that was essential to our decision, we would have to decide whether the written opinion was a nullity because issued after the notice of appeal was filed; but there was not, so we need not. We are, after all, reversing on a point of law, on which the district judge's opinion would in any event not bind us.
 
 
 56
 As I do not want to make more work for our district judges, I shall end by suggesting an economical alternative to the district judge's practice. When a judge decides a case by an oral opinion he should make that opinion tentative, should reserve judgment, and should ask the court reporter to transcribe the opinion. When the judge gets the transcript he should edit it, polish it, add the necessary citations, amplify it if necessary, and then issue it together with the judgment order. Both the delay caused by this procedure and the added work for the judge should be slight, and outweighed by the benefits to the parties and counsel of getting a finished judicial product on which they can base an informed judgment on whether to appeal and how to brief and argue the appeal, and by the fact that the judge will not be open to the accusation that he gives more consideration to litigants whose cases are appealed than to other litigants.
 
 
 
 [1]
 The term "Bankruptcy Code" (or "Code") refers to the codification of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549, into title 11 of the United States Code. Both section 522 and section 541 of the Code were amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, 98 Stat. 363, but those amendments are not relevant to the issue of this appeal and are not applicable to cases filed before 90 days after July 10, 1984
 Neither party raises any issue concerning the jurisdiction of the bankruptcy court. The record does not indicate whether the petition was filed in the district court or directly in the bankruptcy court. In the former event, the case was presumably referred to the bankruptcy court pursuant to a general order of the district court. Since this matter arises under title 11, the bankruptcy court has jurisdiction. In re K & L Ltd., 741 F.2d 1023, 1028 n. 3 (7th Cir.1984).
 
 
 [2]
 It is apparently the trial judge's practice to dispose of bankruptcy cases by oral opinion. See Transcript of Oral Opinion, Record Item 11, at 2. The court enters a judgment and reserves the right to prepare a written order buttressing the oral analysis if a notice of appeal is subsequently filed. Apparently neither party objected to this procedure, and its propriety is not directly before us. There is a danger, of course, that in these circumstances the appellant will not have before him all the arguments later relied on in the written opinion. However, in this case the oral opinion clearly incorporated the bankruptcy court's two written opinions. These opinions seem to us to express the appellees' position more cogently than the district court's later written opinion. So we see no prejudice to the trustee as a result of the district court's waiting to see if an appeal would be taken before preparing a written opinion. So, if technically only the oral opinion and bankruptcy orders are before us because the district court lacked jurisdiction to enter its written opinion, we have an adequate basis for understanding the district court's reasoning and deciding this appeal
 
 
 [3]
 28 U.S.C. Sec. 158 was enacted by section 104(a), title I of Pub.L. 98-353, the Bankruptcy Amendments and Federal Judgeship Act of 1984, 98 Stat. 341. The section took effect on the date of enactment of the act (July 10, 1984). In a series of recent opinions we have discussed the principles governing bankruptcy appeals. Cash Currency Exchange, Inc. v. Shine, 762 F.2d 542 (7th Cir.1985); Firestone Tire & Rubber Co. v. Goldblatt Bros., Inc., 758 F.2d 1248 (7th Cir.1985); In re Riggsby, 745 F.2d 1153 (7th Cir.1984). Generally (that is, with some exceptions not here relevant), a court of appeals has jurisdiction only over "final decisions, judgments, orders, and decrees" of the district court or of the bankruptcy appellate panel. 28 U.S.C. Sec. 158(d). The district court has jurisdiction over appeals from "final judgments, orders, and decrees, and with leave of the court, from interlocutory orders and decrees" of the bankruptcy judge. 28 U.S.C. Sec. 158(a). These two subsections are virtually identical to their predecessors (28 U.S.C. Secs. 1293 and 1334, respectively). Cash Currency Exchange, 762 F.2d at 546 n. 4; Matter of Riggsby, 745 F.2d at 1154, 1155. Cases under the new provisions have been used to interpret the old provisions, Cash Currency Exchange, 762 F.2d at 545-46 & n. 4, and we believe the reverse is also appropriate. See Matter of Riggsby, 745 F.2d at 1155
 An order of a bankruptcy judge allowing or disallowing an exemption is "final" for the purpose of appeal, John T. Mather Memorial Hospital v. Pearl, 723 F.2d 193, 194 n. 1 (2d Cir.1983), and an order of the district court denying an exemption is also "final," In re White, 727 F.2d 884, 885-86 (9th Cir.1984). An order of the district court granting an exemption must also be "final," for it takes the asset out of the estate and puts it beyond the reach of creditors. See In re White, 727 F.2d at 886; 1 L.P. KING, ed., COLLIER ON BANKRUPTCY p 3.03[b] at 3-124 (15th ed. 1985). Therefore, the district court had appellate jurisdiction pursuant to 28 U.S.C. Sec. 158(a) and this court does pursuant to 28 U.S.C. Sec. 158(d).
 Reference should also be made to the analysis in Matter of Barker, 768 F.2d 191, 192-94 (7th Cir.1985) (district court order affirming bankruptcy court's decision denying the stacking of exemptions is final under 28 U.S.C. Sec. 1293(b); thus court of appeals has jurisdiction).
 
 
 [4]
 Since the interest is intangible personalty it falls under section 34-2-28-1(c), which provides a $100 exemption except when the intangible is a debt owed or owed income. The interest here is a debt owed with a security interest, and the debtors would appear to be entitled to no exemption at all